Merrimack, }
Nov. 5, 1902. }

## PITTSFIELD COTTONWEAR MANUFACTURING CO. *v.* PITTSFIELD SHOE CO.

A person guilty of negligence in respect of a duty imposed by law cannot escape liability by showing that he entrusted the performance of the duty to another, over whom he retained no control.

If an action in form for tort is in substance merely for the breach of a contract between the defendant and a third person, no recovery can be had; such action is maintainable only when the act complained of is a breach of a legal duty owed by the defendant to the person injured, without reference to the warranties of the contract.

One engaged in the management of a heating plant, in pursuance of a contract with the owner thereof, is under a legal obligation to exercise care so long as he assumes to operate the machinery for the purposes for which it was designed, and is liable to third persons for injuries resulting from the negligent or unskillful execution of the duties he undertakes to perform.

CASE, for negligence. The declaration states the following facts: The plaintiffs occupy a part of the lower floor of a mill building, called the Drake & Sanborn mill, consisting of a basement, three stories, and an attic. The remainder of the mill was in possession of the Drake & Sanborn Shoe Company, though the attic was in fact unoccupied. The plaintiffs' occupation was under rental from the Drake & Sanborn Company, and began April 1, 1900. The defendants occupied another mill building, distant

about 150 feet from the Drake & Sanborn building. Between the two mill buildings was a boiler-house containing boilers and an engine designed to furnish heat and power to the two mills. The boilers were connected by piping with the different floors of each mill, the system being so constructed that steam could be admitted to or shut off from either mill, and each floor of each mill building, as desired. The Drake & Sanborn mill was supplied as a protection against fire with an automatic sprinkler service, consisting of a system of pipes kept constantly filled with water under pressure. To keep the water in the pipes from freezing, bursting the pipes, and escaping and subjecting the machinery and stock in the mill to injury by water, it was necessary the buildings should be warmed at all times in cold weather. December 1, 1897, the defendants entered into a contract with the Drake & Sanborn Company to operate the boilers and furnish sufficient steam at all times to the heating pipes in the Drake & Sanborn mill to so warm the building that the water in the sprinkler pipes would not freeze. Under this contract the defendants had exclusive charge and control of the boiler-house and the management of the heating plant therein contained. Upon the night of January 19–20, 1901, while this contract was in force and the defendants had the management of the boiler-house and boilers, they carelessly permitted the fire to go out, so that no steam was supplied for heat to the Drake & Sanborn mill, in consequence of which a sprinkler pipe in the attic of the mill froze and burst, and the escaping water flowed down through the mill into the lower story and injured the plaintiffs' goods which were there stored. There were no means of heating the Drake & Sanborn mill except by steam from this boiler-house. The plaintiffs knew of the defendants' contract with the Drake & Sanborn Company, and relied upon their faithful performance of it.

Upon the foregoing facts the declaration alleges that it was the duty of the defendants to exercise reasonable care and prudence in the management of the boiler-house and in the maintenance of a proper fire under the boilers, and to furnish sufficient steam to heat the Drake & Sanborn mill and to prevent the freezing of the water in the pipes therein; and that if the defendants had exercised such care, the pipes would not have frozen and burst, and the plaintiffs would not have been damaged.

The defendants' demurrer was overruled at the October term, 1901, of the superior court by *Stone, J.*, subject to exception.

*Sargent, Niles & Morrill*, for the plaintiffs.

*Albin & Shurtleff*, for the defendants. This is an action of tort, and it cannot be maintained unless the defendants have violated

some duty which they owed to the plaintiffs. " The complaint or allegation in an action of negligence should allege a duty owing the plaintiff by the defendant, or state facts from which the law will imply the duty." Bish. Non-Con. Law, s. 446 ; 14 Enc. Pl. & Pr. 331, and cases cited ; *Hewison* v. *New Haven,* 34 Conn. 136. Doubtless the declaration sets up a duty of the defendants ; but, from the facts stated, to whom does that duty appear to have been owing ? Our position is that it was not to the plaintiffs.

A legal duty is created in only three ways : (1) by the common law, (2) by statute, and (3) by contract. The character of the duties arising from common law are various but limited, while the persons to whom the duty is owed are unlimited ; and any one injured by the violation of such duties may sue therefor. Of this class, public duties and the duty of refraining from the maintenance of a public nuisance are the principal and most common. Duties arising from statutes are limited in character and as to persons by the intent of the legislature. Duties arising from contract are limited in the same respects by the intent of the parties to the contract. We claim that whatever duty the defendants owed was one which arose out of the contract with the Drake & Sanborn Shoe Company, and was to that company only ; and that therefore the plaintiffs have no cause of action against the defendants.

" A tort may be dependent upon or independent of contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract, so that an action *ex contractu* for the breach of contract, or an action *ex delicto* for the breach of duty, may be brought at the option of the plaintiff who brings the action, . . . but the plaintiff must be a party to the contract ; for no person can in general sue in respect of a tort founded on contract who was not a party or privy to, and could not have sued upon the contract." Ad. Torts 17.

The cases upon which the above principle is founded, or in which it is upheld, are numerous, and may be divided into two classes. The first class is one where the defendant had presumably fulfilled his contract, but, on account of some negligence in carrying out its terms, the injury afterward occurred. *Savings Bank* v. *Ward,* 100 U. S. 195 ; *Davidson* v. *Nichols,* 11 Allen 514 ; *Loop* v. *Litchfield,* 42 N. Y. 351 ; *Losee* v. *Clute,* 51 N. Y. 494 ; *Kahl* v. *Love,* 37 N. J. Law 5 ; *Daugherty* v. *Herzog,* 145 Ind. 255 ; *Necker* v. *Harvey,* 49 Mich. 517 ; *Roddy* v. *Railway,* 104 Mo. 234 ; *Heizer* v. *Company,* 110 Mo. 605 ; *Lewis* v. *Terry,* 111 Cal. 39. The second class is where the injury occurred while the defendant was still in the performance of his contract, but violated a duty arising therefrom. *Murch* v. *Railroad,* 29 N. H. 9 ; *Smith* v. *Tripp,* 13 R. I. 152 ; *Nickerson* v. *Company,* 46 Conn. 24 ; *Clancy* v. *Byrne,*

56 N. Y. 129; *Marvin Safe Co.* v. *Ward*, 46 N. J. Law 19; *Tollit* v. *Sherstone* 5 M. & W. 283; *Winterbottom* v. *Wright*, 10 M. & W. 109; *Blakemore* v. *Railway*, 8 E. & B. 1034. There are also cases decided on the same principle where the duty was imposed by statute, the only difference being that the duties in the one case were limited by the intent of the parties contracting, and in the other case by the intent of the legislature. The distinction between these cases does not seem to make them different in principle. In each class the defendants had certain duties under a contract or statute; they did not perform them, and injury resulted to the plaintiffs, who were not contracting parties; and in all of the cases the injury resulted directly from the violation of the duty. In all these cases there is a common characteristic: the negligence was of omission and not of commission. The defendants merely neglected to do something which, but for a contract or statute, they would have been perfectly free to neglect. That characteristic is also found in the case at bar.

If the duty violated here is founded upon a contract to which the plaintiffs were not party or privy, under the above doctrine they cannot recover in this suit. The plaintiffs must either show that the statement already quoted from Addison on Torts is not a true statement of the law, or that the duty, a breach of which is complained of, does not arise from the contract. On the question whether the negligence complained of is for a breach of duty arising from contract, we have cited cases which hold that the duty did arise from contract, some of which are on all-fours with the case at bar; and as to all of them, any argument which may be made in behalf of the plaintiffs' position in this case could have been made, and generally was made, on behalf of the plaintiffs in those cases.

There is also another test which is often applied to determine whether an action in tort is founded on a contract. That test is applied by answering the question: Is it necessary for the plaintiff to plead or prove the contract in order to maintain his action? *Whittaker* v. *Collins*, 34 Minn. 299. Apply that test here. Suppose the contract set up by the plaintiffs had provided that the defendants were to warm only the first floor of the factory: Would they be liable for not warming the attic? Suppose on the trial it could be proved that under the contract which was in fact made the defendants were not obliged to warm the attic and keep the pipes therein from freezing: Would they be liable? Both questions must be answered in the negative, which conclusively shows that the duty arose from and is measured by the contract.

In *Kahl* v. *Love, supra*, one of the reasons assigned for the rule is, that "the object of the parties, in inserting in their contract

specific undertakings with respect to the work to be done, is to create obligations and duties *inter sese*. These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If a third person can acquire a right in a contract, in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts."

So here, the Pittsfield Shoe Company entered into an alleged contract, understanding, as is to be presumed, all of the circumstances and responsibilities which were connected with the performance of that contract. They were supposed to understand what their liability would be in case of the freezing and bursting of the sprinkler pipes on account of negligence, namely, the liability that would be incurred by the wetting down of a stock of shoes manufactured or in process of manufacture, and to fix their remuneration accordingly. The plaintiffs, afterward relying, as they say, upon the faithful performance of the contract, moved a stock of cotton underwear into the building, thereby increasing the defendants' liability to that extent. They might as well have brought in silks and furs, and claimed the same protection.

If the plaintiffs' contention is sound, the defendants could not have cancelled the contract, or ceased to heat, without the consent of the plaintiffs, because of a duty owed to the latter. In this view, if the defendants attempted to cancel the contract under which a duty was owed to the plaintiffs, the latter could say: "You owe us a duty. Relying on your contract with the Drake & Sanborn Company, we have changed our position and moved into this building at great expense. If you refuse to perform the contract, we will sue you for damages." In view of the fact that proof of the contract will be necessary if the parties are sent to trial on this declaration, the defendants, without going into the matter in detail, ask the court to consider the embarrassments likely to arise in attempting to prove the details of a verbal contract where but one party to the contract is a party to the suit.

The plaintiffs say that the contract must be proved in order to make the defendants liable, and we agree with them, because the contract is the measure of duty. If the defendants did not contract to warm the pipe which burst, it was not their duty to warm it; if they agreed to warm it only in the day-time, their duty was limited to that time; if the contract was that they should not warm it at all, it did not become their duty, either to the Drake & Sanborn Company or to the plaintiffs, to do so, and no one can complain because they did not.

A person responsible for certain conditions on account of which, if due care is not exercised, injury may result, is bound to

exercise such care; but a person not responsible for such conditions has no legal duty to prevent injury. A is legally and rightfully cutting down a tree, and, as it is about to fall, B runs in where the tree falls upon him; A negligently fails to warn B, or support the tree and keep it from falling, which he could easily have done; A is responsible for the injury to B. A is standing near a tree which is about to fall, but through no agency of his; B runs in where the tree falls upon him, but A carelessly fails to warn B, or to do anything to prevent the tree from falling, although he could have done so without danger to himself; A is not liable for an injury resulting to B. The act of negligence in both cases is exactly the same, yet in one case A is liable and in the other he is not. What is the distinction? Simply this: in the first instance A was responsible for the condition of things from which, on account of want of due care, the injury resulted; in the second case he was not so responsible, and as a consequence owed no duty toward B to prevent his injury.

It is in a broad sense that we use the word "omission," as distinguished from "commission." The defendants omitted from the very beginning, as did A in the second illustration. The distinction we make in this case, and the only distinction necessary to make, is the broad one that the defendants, to be held legally liable, must have been responsible for the conditions existing at the time the act of negligence commenced. The adjudicated cases bear out this distinction. In no case has the defendant been held liable for negligence unless in the first instance responsible for the dangers of the situation. We have been unable to find such a case, we think the court will have none in mind, and certainly the plaintiffs have cited none. In all the cases cited in the defendants' brief, as well as in the plaintiffs', the party held liable had control and possession of the very force or thing that caused the injury, thus being responsible for the dangerous situation; while in every case where the defendant did not have such control and possession, and so was not responsible for the dangerous situation, he was not liable, however gross or seemingly proximate his carelessness. The plaintiffs admit that the defendants, in order to be held liable, must have had control of the property, forces, and agencies; and if that principle were fairly and honestly applied, the result we contend for would be reached. This rule excludes liability, not only for failing to prevent another from injuring himself, but for failing to prevent another from injuring a third person.

The plaintiffs argue that the Drake & Sanborn Company were relieved from their admitted duty to keep the pipes from freezing, by reason of the contract with the defendants. This cannot be so.

So long as the Drake & Sanborn Company maintained the pipes, so long did their duty to keep them from freezing continue; and negligence of an agent in that respect was negligence of the principal. A person cannot relieve himself of a duty which he owes, by making a trade with another person to perform it for him. This is so reasonable and evident that it is not necessary to cite authorities to sustain the proposition. One of the chief and ever-present characteristics of a common-law duty is that the party owing it cannot relieve himself. The situation which gives rise to the duty must be changed, or assent of the endangered party must be obtained. The Drake & Sanborn Company might have relieved themselves from the duty to keep the pipes from freezing by ceasing to maintain them, or by turning the building over to parties who would be shouldered with the same responsibility, or by refusing to allow the plaintiffs to occupy the rooms as tenants; but if the defendants owed any common-law duty toward the plaintiffs to keep the pipes from freezing, they could not relieve themselves by shutting off the water, or by giving the plaintiffs notice to quit the premises. Once let the common-law duty affix under the circumstances of this case, and the defendants would be obliged to heat the building week after week, month after month, and year after year, whether paid or not, so long as the plaintiffs chose to remain in the building, and the Drake & Sanborn Company chose to maintain the pipes.

The defendants were not responsible for the dangerous situation. They were not responsible for the cold night, nor for the pipes, nor for the plaintiffs' occupancy. These were the combined elements that brought about the injury, and over none of them had the defendants any control. As the defendants were not responsible for the dangerous situation, they owed no common-law duty to prevent injury therefrom. The defendants were heating under a contract, and that contract was the measure of their duty. But for the contract, they could have heated partially, or not at all. As the duty was one arising from contract, the breach was a breach of contract merely; and the plaintiffs, not being party to the contract, cannot maintain the action.

PARSONS, C. J. No claim is made of lack of heat in that part of the premises occupied by the plaintiffs. Whether the occupation of the premises by the plaintiffs, as tenants of the Drake & Sanborn Company, and the consent of the defendants to furnish them with heat, presumed from their continuance in performance with knowledge of the change in occupation, gave the plaintiffs any right in the contract so far as it is related to the premises occupied by them, need not therefore be considered. The wrong

alleged is the invasion of the plaintiffs' premises and the injury to their goods by water flowing from the sprinkler pipes in the attic of the Drake & Sanborn mill. As stated by the plaintiffs' counsel in argument, the complaint is not for "insufficient heat, but because of an excess of water." This legal wrong to the plaintiffs was not dependent upon their occupation of a portion of the Drake & Sanborn mill as tenants to the Drake & Sanborn Company. They would be entitled to protection from such invasion and to recompense for loss so sustained if they were tenants to another, or occupied adjacent real estate under title in fee.

It has been said that in ascertaining the "content of the law," legal duties come before legal rights (Holmes Com. Law 219); but in the administration of the law there must be found a correlative existence of rights and duties. If there is no wrong without a remedy, there can be no invasion of a legal right for which the law affords a remedy unless there exists at the same time a legal duty upon some one to prevent or abstain from such invasion. The wrong to the plaintiffs being the incursion of water upon their premises, the next inquiry in a philosophical search for a remedy is : Upon whom does the law, upon these facts, impose the duty of preventing the invasion by water from which the plaintiffs suffered?

In the attic of the Drake & Sanborn mill, for a lawful purpose, — protection against fire, — water was so confined and maintained that there was probability of injury to others if it escaped. Upon the parties responsible for the collection and maintenance of this water, the law imposes the duty of exercising care to prevent its escape. The care and control of the premises upon which the dangerous condition existed having been surrendered by the owners to others, the responsibility for the failure to exercise such care and control rests with the guilty parties, and not with the owners. *Carter* v. *Berlin Mills*, 58 N. H. 52. In this situation, the only duty of the Drake & Sanborn Company toward the plaintiffs — the only right which the plaintiffs could insist upon against them — was the exercise of care to prevent injury to them. They had no ground of complaint if the building were not heated, if by any mechanical device the freezing of the water or its escape if frozen could be prevented, or if by due attention and watchfulness the flow of the water from the frozen or broken pipe into their premises could have been stopped before injury was done. Their right to damages for their injury is not dependent upon the fact of lack of care in heating. Any carelessness by which the water escaped upon them to their injury would have sustained their action.

It is suggested that, because the Drake & Sanborn Company

employed an independent ·contractor to operate the boilers and to furnish them with heat, they were relieved from all liability for an injury to others which might result from failure to supply heat to the building.    *Carter* v. *Berlin Mills*, 58 N. H. 52, is cited.    The argument, however, is based upon a misconception of the "independent contractor" rule, as it is called, and the principle of the case cited.    The rule is, that where the liability sought to be enforced is based upon the principle of *respondeat superior*; if the person for whose negligence recovery is sought is himself an independent contractor, or the employee of one over whom as to the detail of his work the defendant has no control, liability cannot be enforced by invoking that doctrine.    But where the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him.

"There are certain absolute duties resting upon natural persons and corporations, either by operation of law or by reason of having been voluntarily assumed.    The law does not permit a person or corporation to cast off such duty upon an independent contractor so as to exonerate himself or itself for the consequences of its nonperformance.    Of this nature is the duty . . . of guarding dangerous substances collected on their property."  1 Thomp. Com. Neg., s. 665 ; *Cabot* v. *Kingman*, 166 Mass. 403, 406.    A master cannot relieve himself of any non-delegable duty owed by him to his servants by contracting for its performance.    *Story* v. *Railroad*, 70 N. H. 364, 368 ; 1 Thomp. Com. Neg., s. 532.    A railroad corporation cannot relieve itself from responsibilities imposed by law as a part of its franchise, by contracting for the exercise of part of its authority by an independent contractor.    *Rolfe* v. *Railroad*, 69 N. H. 476.

"Unquestionably, no one can be made liable for an act or breach of duty, unless it be traceable to himself or his servant or servants in the course of his or their employment.    Consequently, if an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not answerable. . . . That rule is, however, inapplicable to cases in which the act which occasions the injury is one which the contractor was employed to do ; nor, by parity of reasoning, to cases in which the contractor is intrusted with the performance of a duty incumbent upon his employer, and neglects its fulfillment, whereby an injury is occasioned."  *Pickard* v. *Smith*, 10 C. B. N. S. 470, 480.

In *Carter* v. *Berlin Mills*, 58 N. H. 52, the damage did not occur because the act which the Thurstons were employed to do was unlawful, nor because of the improper or unlawful construction of

the dams. It was due to the improper use of the dams by the Thurstons. As the Berlin Mills had no control over the manner of use of the constructions by the Thurstons,— as the Thurstons were not their servants,— they were not liable for their careless acts; and as no other ground of liability except that of *respondeat superior* was suggested, the plaintiffs failed. See *Knowlton* v. *Hoit*, 67 N. H. 155; *Manchester* v. *Warren*, 67 N. H. 482. The duty imposed upon the Drake & Sanborn Company was to exercise care to prevent the incursion of water upon the plaintiffs' property. They are not excused by the fact that they employed others, over whom they retained no control, to exercise this care for them. Because the Drake & Sanborn Company are liable, it does not necessarily follow that the defendants are not. But the consideration that the primary duty (the violation of which resulted in the injury complained of) rested upon the Drake & Sanborn Company, may be important upon the question which may arise hereafter, whether the plaintiffs' injury was caused by the fault of the defendants.

"Actionable negligence is the neglect of a legal duty. The defendants are not liable unless they owed to the plaintiff a legal duty which they neglected to perform. With purely moral obligations the law does not deal. . . . To bring the case within the category of actionable negligence some wrongful act must be shown, or a breach of some positive duty." *Buch* v. *Company*, 69 N. H. 257, 260. The duty must be one owed by the defendants to the plaintiffs in respect to the very matter or act charged as negligence. *Leavitt* v. *Shoe Co.*, 69 N. H. 597; *McGill* v. *Granite Co.*, 70 N. H. 125; *Morrison* v. *Fibre Co.*, 70 N. H. 406; *Davis* v. *Railroad*, 70 N. H. 519, 520.

It is alleged in the plaintiffs' declaration that it was the duty of the defendants to exercise care and prudence in the operation of the boilers, and to furnish sufficient steam to heat the Drake & Sanborn mill and to prevent the freezing of the water in the pipes therein. As the duty, the breach of which constitutes actionable negligence, is one imposed by law, the mere allegation of the duty is insufficient to establish it. The question remains whether upon the facts stated the law imposes the duty. 1 Ch. Pl. 370; *Seymour* v. *Maddox*, 16 Q. B. 326; *Kennedy* v. *Morgan*, 57 Vt. 46; *Marvin Safe Co.* v. *Ward*, 46 N. J. Law 19, 23.

It is alleged that at the time of the injury complained of the defendants were under contract with the Drake & Sanborn Company to furnish sufficient steam to heat their mill; but this allegation does not make out a cause of action in favor of these plaintiffs against the present defendants. It discloses a duty on the part of the defendants to heat the building; but this duty was to the Drake & Sanborn Company and to no one else. Nothing is

better settled than that an action will not lie in favor of any third party for a breach of duty so created. *Losee* v. *Clute*, 51 N. Y. 494; *Necker* v. *Harvey*, 49 Mich. 517; *Winterbottom* v. *Wright*, 10 M. & W. 109 · *Longmeid* v. *Holliday*, 6 Exch. 761; *Heaven* v. *Pender*, 11 Q. B. Div. 503. The plaintiffs concede in argument that no recovery can be had upon any duty imposed by force of the contract, and that the recovery, if had, must be based upon a duty imposed by law under the circumstances, without reference to the contract. It is therefore unnecessary to refer in detail to the numerous cases cited by the defendants in support of the propositions, that the rule that no one can sue upon a contract unless he is a party to it cannot be evaded by bringing what is really an action for a breach of contract in the form of an action for a tort, and that " for an injury arising from mere negligence, however gross, there must exist between the party inflicting the injury and the one injured some privity, by contract or otherwise, by reason of which the former owes some legal duty to the latter." *Buckley* v. *Gray*, 110 Cal. 339, 343,—52 Am. St. Rep. 88, 89; *Roddy* v. *Railway*, 104 Mo. 234,—24 Am. St. Rep. 333; *Savings Bank* v. *Ward*, 100 U. S. 195. Without attempting to define the principle by which all these cases were or might have been decided, it may safely be said that in no case has recovery been permitted where the action, though in form for tort, was in substance merely for a breach of the warranty in the contract of the defendant with a third person. *Murch* v. *Railroad*, 29 N. H. 9, 34; *Patterson* v. *Colebrook*, 29 N. H. 94, 102. The action has been deemed maintainable only when the act complained of could be seen to be a breach of a legal duty owed from the defendant to the person injured, without any reference to the warranties of the contract. The plaintiffs, therefore, cannot recover upon the ground that the defendants failed to do as they agreed with the Drake & Sanborn Company.

Although the contract is evidence tending to prove that the defendants were managing the boilers, upon the question of their negligence toward the plaintiffs — their breach of any duty owed by them to the plaintiffs — the engagements which they entered into with the Drake & Sanborn Company are entirely immaterial.  *Styles* v. *Long Co.*, (N. J.) 51 Atl. Rep. 710. Whether the maker of a machine which he sells to another is liable to a third person for injuries arising from defects in its construction, is a question raised in numerous cases. The weight of authority is against any such liability, except " where the thing causing the injury is of a noxious or dangerous kind," or " where the defendant has been found guilty of fraud or deceit in passing off the thing." *McCaffrey* v. *Company*, (R. I.) 55 L. R. A. 822. It may be that the princi-

ple of these cases would relieve the defendants from direct liability to the plaintiffs, if the ground of action arose upon their engagements to furnish steam for heating purposes to the Drake & Sanborn Company, from an independent plant operated by themselves. Such facts may present a question of difficulty, but its consideration is not now necessary.

The claim presented by the declaration is not merely for furnishing an insufficient supply of steam, but it is for the negligent and unskillful management of machinery designed to protect all of the occupants of the building from the danger from which the plaintiffs suffered. It is also alleged that the exercise of ordinary care in the management of the boilers would have prevented the injury, and that the defendants were at the time in the sole and exclusive possession of the heating machinery, and were operating it. "The duty to do no wrong is a legal duty. The duty to protect against wrong is, generally speaking and excepting certain intimate relations in the nature of a trust, a moral obligation only, not recognized or enforced by law." *Buch* v. *Company*, 69 N. H. 257, 261. The mere possession, therefore, of the means by which harm could be averted from the plaintiffs imposed upon the defendants no legal obligation to protect them. Possession merely of the boiler-house and machinery did not impose upon the defendants any legal obligations to put the heating devices in operation. But the declaration goes farther, and alleges that the defendants were in fact operating the machinery; and the negligence relied upon is the want of skill and care in what the defendants were assuming to do.

Assuming to operate the machinery for the purpose for which it was designed,— to protect all the occupants of the building, including the plaintiffs,— the law imposes upon the defendants, by force of such assumption, the obligation to exercise ordinary care and skill in doing what they attempted to do. *Edwards* v. *Lamb*, 69 N. H. 599; *Gill* v. *Middleton*, 105 Mass. 477, 479; *Baird* v. *Daly*, 57 N. Y. 236, 240, 241. This obligation arises, not from the contract, but from the action undertaken. There is a privity, not of contract, but of duty. It may be conceded that no liability would attach if the defendants, in violation of their contract, had ceased to manage the boilers. The charge is of negligent management while still in control; the duty violated is the obligation to exercise care so long as they retained control. Upon the facts stated in the declaration, the case is as if the defendants had assumed to hold closed a valve which, closed, prevented the flow of water into the plaintiffs' premises. Knowing that if the water escaped harm would result to others, the duty would rest upon them — at least, toward all for whose protection the device they assumed

to operate was designed — to exercise care in what they did.   They could not carelessly abandon their voluntarily assumed duty.

In the present case, upon the facts alleged the defendants were holding back the water by supplying heat.   While under no obligation, so far as the plaintiffs were concerned, to furnish heat or hold back the water, they could not suddenly cease from their self-appointed task without care as to what might happen from such action.   If the pipe in the attic froze because no steam was admitted to the steam pipes upon that floor, there would be no liability, because the defendants did not assume to so protect the pipes.   As tending to show that the defendants were not in fact operating the heating plant for the protection of the occupants of the building, the contract would be of course material.   If they were operating it for the purpose of heating their own building merely, or portions of the Drake & Sanborn mill from which no harm came, they are not liable.   The defendants, so far as the Drake & Sanborn Company were concerned, were the agency employed by them to operate the heating plant common to both mills. Though independent contractors, so that the Drake & Sanborn Company were not liable for their casual acts of negligence under the rule of *respondeat superior*, the ground of the defendants' liability to others is explained upon the analogy of the liability of a servant to third parties.

As a general rule, a servant or agent who has contracted to perform a duty owed by his master or employer is liable only to his employer for his mere failure to perform such duties, and is not liable to third parties.   *Wilson* v. *Rich*, 5 N. H. 455; *Hill* v. *Caverly*, 7 N. H. 215; *Denny* v. *Company*, 2 Denio 115; *S. C.*, 5 Denio 639; *Murray* v. *Usher*, 117 N. Y. 542, 546, 547; *Lane* v. *Cotton*, 12 Mod. 472, 478; 1 Ch. Pl. 75; Sto. Ag., ss. 308, 309; 1 Shearm. & Red. Neg., s. 243.   The principle is the same as in the cases cited as to the construction of a machine under contract with a third party.   The liability cannot arise out of the engagements of the contract, but only from such duty as the law implies from the use and possession of the tools and appliances of the master.   So long as the servant does nothing, his contract creates no liability to third person; but the moment he enters upon the work, the obligation of care arises.   He cannot create a dangerous situation, and suddenly abandon the work without care for the danger of others.   He is bound to the same obligation of care in stopping the machine as in starting it.   *Osborne* v. *Morgan*, 130 Mass. 102; *S. C.*, 137 Mass. 1.

It is suggested that the failure of the Drake & Sanborn Company to maintain an inspection of the building by a watchman was the proximate cause of the injury to the plaintiffs.   The plaintiffs

cannot recover here unless the fault complained of was the proxi-
mate cause of their damage.   If ordinary care on the part of the
Drake & Sanborn Company, which they were bound to exercise to
perform their duty to keep the water from the plaintiffs, would
have detected the escape of the water and prevented the injury to
the plaintiffs, their failure to exercise such care would constitute
the proximate cause, not of the bursting of the pipes, but of the
injury to the plaintiffs.   The facts alleged of the necessity of
heating to prevent injury to the plaintiffs' goods by water nega-
tive the suggestion that any negligence except that in the man-
agement of the heating plant was legal cause for the injury.   If
the suggestion is sustained by evidence at the trial, the question
will be raised.   It is sufficient now to say that the defendants are
liable only for damage which was the proximate result of their
unskillful management of the heating plant.   They are not liable
to those as to whose injury their negligence was only a remote
cause, if the proximate cause of the injury was the failure of third
parties to perform a positive duty owed by them to the plaintiffs.

The defendants' knowledge of the plaintiffs' situation and the
character of the probable damage to their property by water may
be important upon the question whether the defendants acted with
ordinary care under all the circumstances as they knew or ought
to have known them.   If the plaintiffs consider an amendment of
the declaration as suggested advisable, application for leave to
make such amendment can be made to the superior court.

                                                 *Exception overruled.*

All concurred.