Hillsborough,
No. 5714.

WILLIS A. CORSON

*v.*

LIBERTY MUTUAL INSURANCE COMPANY.

April 30, 1970.

*James M. Winston* and *Peter J. Bourque* ( *Mr. Winston* orally ), for the plaintiff.

*Wadleigh, Langdell, Starr, Peters & Dunn* and *James S. Yakovakis* ( *Mr. Philip G. Peters* orally ), for the defendant.

PER CURIAM. This is an action to recover damages for personal injuries sustained by the plaintiff in the operation of an injection moulding machine at the Foster Grant Co., Inc., in Manchester on December 18, 1959. Trial by jury resulted in a verdict for the plaintiff. Defendant's exceptions to the denial of motions for nonsuit and directed verdict, the court's charge, and the admission and exclusion of evidence were reserved and transferred by the Trial Court, ( *Leahy,* C. J ).

The defendant in this case was the workmen's compensation carrier and had fully paid to the plaintiff the compensation he was entitled to receive under RSA ch. 281. The present action is based upon a claim that Liberty Mutual, as compensation carrier, undertook to carry out periodic inspections of the Foster Grant plant for the purpose of assisting the employer in the safety of the plant operations and did so negligently, and that proper inspection would have prevented the malfunction in the moulding machine that caused the plaintiff's injury.

At the outset defendant asks us to re-examine *Smith* v. *Am. Employers' Ins. Co.*, 102 N. H. 530, 163 A.2d 564, decided in 1960, in which a majority of the court held that the compensation carrier of an employer could be sued in a third party action and did not share the immunity of the employer to common law actions granted by RSA 281:14. Laws of 1961, 194:8 passed a little over a year after *Smith* v. *Am. Employers' Ins. Co., id.,* amended the statute by adding the carrier specifically to those exempt from common law action under RSA 281:14. In view of the limited application of the *Smith* case on this point we are not disposed to re-examine this ruling.

From the evidence in the case the following facts could be found: The Foster Grant Co. had started its plant in Manchester in 1956 and on the date of the accident had approximately 12-15 injection moulding machines in operation, most or all of which were made by or for the Foster Grant Co. The plaintiff was manually removing a completed mould from the machine he was operating when it suddenly closed, crushing his hand. The machine operated on a cycle started by the operator sliding a gate from left to right to close it. At this point plastic was fed from a hopper into the dies which then closed, thus moulding the product. Upon the completion of the mould the dies separated and the operator moved the gate from right to left to open the gate, then removed the finished product. In addition to a shut-down button the machine contained four other guards, these were the sliding gate, an electrical limit switch, a hydraulic valve, and a drop bar.

While the exact cause of the accident is not clear it could be found that there was a malfunction of the safety devices. In addition it could be found that defendant knew or should have known there were "fail-safe" devices which could have prevented the dies from closing until the gate was fully closed.

Liberty Mutual maintained a substantial department for the purpose of inspecting operations of companies it insured and advising them on safety improvements. In its advertisements it stressed this service and the advantages to be derived from it. It appears that Mr. Chase, defendant's inspector, visited the Manchester plant about four times a year from the date of its opening. Chase, while not a graduate engineer, had substantial knowledge in the engineering field and received from Liberty Mutual material on injection moulding machines. Each inspection took about

three hours and he was accompanied at the plant by a Mr. Temple, the coordinator of safety for the Foster Grant Co. Chase's inspection of the moulding machines was particularly directed at the safety guards to see if they were functioning. While he submitted a report of each visit to the Foster Grant Co. he made no recommendations as to any change in safety guards on the injection moulding machines prior to the accident. Evidence of the inspection after the accident by the representatives of Liberty Mutual was admitted on the issue of the relationship of Liberty Mutual to Foster Grant Co. It appears that changes were recommended by Liberty Mutual following this inspection but whether they were adopted or not by Foster Grant does not appear.

The machine in this case was designed by Foster Grant Co. which carried out all maintenance on it, including daily inspections. The question thus squarely presented is whether a company which undertakes to assist accident prevention by additional inspections and advice rendered to the company primarily charged with the duty can be liable for negligent inspection to an injured employee. We agree with the plaintiff that on the evidence the acts of Liberty Mutual in inspecting and giving advice on safety to the Foster Grant Co. must be considered as gratuitous although the result would be the same if they were by contract.

The principles involved are not new to this jurisdiction. *Tullgren v. Company*, 82 N. H. 268, 133 A. 4. *See Brunel v. Association*, 95 N. H. 391, 64 A.2d 315; *Smith v. Am. Employers' Ins. Co., supra; Pittsfield Cottonwear Mfg. Co. v. Shoe Co.*, 71 N. H. 522, 53 A. 807. "The duty to use care in rendering a service arises not from a right to receive the service, but from the relation between the parties which the service makes." *Tullgren v. Company, supra* at 270. "The service being assumed, the plaintiff was entitled to receive due care . . . not only in means but in manner as well." *Id.* at 272. Since there was evidence that the jury could find that the defendant undertook to render a special service to its insured, and that its negligence in performing the service was causal of the plaintiff's injury, the issues were properly submitted to the jury.

The court instructed the jury that "the duty arises under a basic principle of our jurisprudence that one who undertakes to act even gratuitously may be liable to persons injured by

his failure to use due care. " It was then properly instructed to determine "what has happened . . . did the defendant voluntarily undertake to inspect for safety purposes the machinery and equipment at Foster Grant? Was the defendant guilty of any act of causal negligence in its inspection duty which caused or helped to cause the injury to Mr. Corson?"

In connection with determination of the relationship between the parties, the jury was also properly instructed that the evidence that certain recommendations were made by the defendant's agent after the accident should be considered only upon the issue of "the relationship between the parties here, the Insurance Company and Mr. Corson, and not . . . to determine the liability. "

We consider it beyond debate that if a duty on the part of the defendant were found to have existed, that duty extended to the plaintiff, who was clearly within the orbit of risk which would be created by negligent performance of the duty. *Derby* v. *Company*, 100 N.H. 53, 58, 119 A.2d 335. *See Murray* v. *Bullard Company*, 110 N.H. 220, 265 A.2d 309; *Derosier* v. *Company*, 81 N.H. 451, 130 A.145.

While the defendant objected " to the manner in which the Court described the relationship of the parties . . . the manner in which the Court described the duty of the [insurance] carrier and how the duty is created, " no ground for the " objection " was advanced by counsel, and no exception appears to have been preserved. The defendant did except to the denial of certain of its numerous requests for instructions, but none of these purported to define the relationship under which a duty could arise.

We find no error in the disposition made by the trial court of the several requests to which the defendant's exceptions relate. A number of them were designed to inject the issue of whether the insured or the plaintiff relied for the plaintiff's safety upon the defendant's inspection. The plaintiff's claim however did not rest upon reliance upon a bare and unfulfilled promise to inspect, ( *See* Restatement, Second, Torts *s.* 323, comment *d* ), but rather was founded upon negligent performance of a service in fact entered upon by the defendant and accepted and encouraged by the insured. *Nelson* v. *Union Wire Rope Corp.,* 31 Ill. 2d 69, 199 N.E. 2d 769. These requests were properly denied.

The issues presented may be aptly described in the language of *Cardozo,* Ch. J., in *Marks* v. *Nambil Realty Co., Inc.,* 245 N. Y. 256, 259: "His case is made out when it appears that by

reason of such negligence what was wrong is still wrong, though prudence would have made it right . . . The inference is permissible that the [defendant's conduct] cloaked the defect, dulled the call to vigilance, and so aggravated the danger." *See also,* Prosser on Torts *s.* 54, at 342, 343 (3d ed. 1964); Restatement, Second, Torts *s.* 324A (b), and comment *d. Cf. Roberson* v. *United States,* 382 F. 2d 714 (9th Cir., 1967).

Other requests were properly denied, either because adequately covered by instructions given, or because they related to selected portions of the evidence as to which instructions were not required. *Lynch* v. *Sprague,* 95 N. H. 485, 490, 66 A.2d 697. A careful review of the record discloses no reversible error, and the order is

*Judgment on the verdict.*