**Joseph D. WISE**

v.

**KENTUCKY FRIED CHICKEN CORP.**

**Civ. No. 82–427–D.**

United States District Court,
D. New Hampshire.

Feb. 1, 1983.

992

Stephen Ells, Hampton, N.H., Ralph A. Barbagallo, Jr., Lawrence, Mass., for plaintiff.

Gilbert Upton, Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

This is a diversity action removed to this court from the Superior Court of Rocking-ham County pursuant to 28 U.S.C. § 1441. Plaintiff is a New Hampshire resident; defendant is a Delaware corporation with a principal place of business in Louisville, Kentucky. The complaint states that plaintiff was an employee of defendant's franchisee, KFC Foods of Salem, New Hampshire, and that he was burned by hot cooking oil from an allegedly defective Collectramatic Pressure Fryer during the course of his employment. Plaintiff alleges that the manufacturer of the pressure fryer informed defendant franchisor, Kentucky Fried Chicken Corporation ("KFC"), of certain defects in the pressure fryer and had requested KFC to instruct its franchisees to take certain remedial measures to correct the defect. Plaintiff claims that his injuries were the result of KFC's alleged failure to warn, supervise, and/or train young employees of its franchisees, or to direct its franchisees to make the necessary modifications to the allegedly defective pressure fryer.

The case now comes before the Court on KFC's motion for summary judgment. The gist of the motion is that defendant's franchisee is an independent contractor, and that KFC was under no duty, and undertook no duty, to control the day-to-day activities or working conditions of franchisee's employees. KFC also argues that under its Approved Supplier System its franchisees were free to choose from several suppliers of pressure fryers, and that once a piece of equipment was purchased, KFC had no authority or responsibility to require franchisees to make changes to the equipment. Plaintiff argues that KFC, by contract, retained control over the type of equipment its franchisees could utilize, and in so doing acquired an independent tort duty to warn and/or train the franchisee's employees concerning known dangers or defects in such equipment.

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law". Rule 56(c), Fed.R.Civ.P.; *Condon v. Local 2944, United Steelworkers of America,* 683 F.2d 590, 594 (1st Cir.1982). A dispute of fact is material if it "affects the outcome of the litigation" and is genuine if manifested by "substantial" evidence "going beyond the allegations of the complaint". *Pignons S.A. de Mecanique v. Polaroid Corporation,* 657 F.2d 482, 486 (1st Cir.1981), *quoting Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In filing its motion, KFC has "assumed the burden of demonstrating there was no genuine issue of material fact". *White v. Hearst Corporation,* 669 F.2d 14, 17 (1st Cir.1982), *quoting Over the Road Drivers, Inc. v. Transport Insurance Company,* 637 F.2d 816, 819, n. 4 (1st Cir.1980); *see also Mack v. Cape Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir.1977).

In reviewing the summary judgment motion, the Court must view the evidence and draw all reasonable inferences in the manner most favorable to plaintiff. *Pignons S.A. de Mecanique v. Polaroid Corporation, supra.* The pertinent facts are basically undisputed at present. On July 24, 1973, KFC entered into a "Standard Franchise Agreement" with the predecessors to plaintiff's employer. In return for monthly royalty payments, KFC granted the franchisee an exclusive license to use KFC's "applicable Trademarks and System", including all service marks, trade names, trademarks, copyrights, and patents. Agreement ¶¶ II, III A. Specifically, the franchisee acquired a license and franchise in KFC's "systems for cooking, preparing, and merchandising certain food products and items, which systems include the use of trade secrets, *specialized cooking equipment,* stylized store premises, menus and food containers". *Id.,* ¶ II (emphasis added).

The Agreement further provides that the franchisee will "actively manage the day-to-day operations of the outlet", and "shall at all times remain an independent contractor". *Id.,* ¶ IV H, I. Nevertheless, the franchisee is required to operate in accordance with KFC's "Confidential Operating Manual", in order to "protect [KFC's] reputation and good will and to maintain uniform standards of operation". *Id.,* ¶ VI G. The Agreement grants KFC the right to inspect the premises to insure compliance with the operating manual. *Id.* The Agreement requires the franchisee to purchase only approved equipment, paper goods, and other products. These items may be purchased from approved sources of supply or from a previously unapproved source at franchisee's request if the equipment or product meets KFC's "current standards and specifications". *Id.,* ¶ VI B. KFC reserves the right to review the quality of equipment supplied by an approved manufacturer or supplier, and to remove manufacturers and suppliers from the list of approved sources. *Id.,* ¶ VI B. Franchisees must be informed if a supplier is removed. *Id.* Conversely, the Agreement provides that KFC shall "[u]ndertake further refinement of its products and efficiency of its equipment, and inform FRANCHISEE of proven methods of quality control". *Id.,* ¶ VII C.

Apparently the Collectramatic pressure fryer in question was purchased from the approved supplier list. According to Winston Shelton, the inventor of the fryer and the President of Collectramatic, Inc., there have been approximately forty accidents since 1973 in Kentucky Fried Chicken stores involving Collectramatic pressure fryers similar to the fryer plaintiff was cleaning when he was injured. Affidavit, ¶ 3. Mr. Shelton's affidavit states that his company wrote KFC several times between 1973 and 1977 to inform KFC of corrective measures which could be utilized to avoid such accidents, and that since 1977 it has continued to warn KFC of the dangers associated with the use of the equipment. Affidavit, ¶¶ 4, 5.

Although the parties have not specifically addressed the issue, the threshold issue before the Court is what law applies in this action. A federal court sitting in diversity cases must follow the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496,

61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). *Roy v. Star Chopper, Inc.,* 584 F.2d 1124, 1128 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Dunlap v. Aulson Corporation,* 90 F.R.D. 647, 649 (D.N.H.1981). New Hampshire follows the approach adopted by the Restatement (Second) of Conflicts of Laws §§ 6, 146, and looks to the law of the state with the most significant relationship to the cause of action. *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966). Applying the choice-influencing considerations set forth in *Clark v. Clark, supra,* the Court concludes that the substantive law of New Hampshire applies to this action. Plaintiff was injured while working in New Hampshire for a franchisee whose franchise contract was performed in New Hampshire.[1] The Court is aware of the fact that the Franchise Agreement (¶ XIII D) provides that it is to be governed by the law of Kentucky. The choice of law of the parties to a contract would likely govern any contract action between the parties, *see Consolidated Mutual Insurance Company v. Radio Foods Corporation,* 108 N.H. 494, 496, 240 A.2d 47, 49 (1968), but would not *a fortiori* govern a tort action by a third party. New Hampshire has a strong governmental interest in applying its own laws to actions involving those who are injured while employed or residing within its borders. *Maguire v. Exeter & Hampton Electric Company,* 114 N.H. 589, 325 A.2d 778 (1974) (law of New Hampshire governs issue of damages in wrongful death action of Maine resident employed in New Hampshire); *Stephan v. Sears Roebuck & Co.,* 110 N.H. 248, 251, 266 A.2d 855, 858 (1970) (law of New Hampshire governs products liability action involving injury occurring at plaintiff's summer home in New Hampshire); *cf. LaBounty v. American Insurance Company,* 122 N.H. ——, 451 A.2d 161 (1982) (law of Maine or Massachusetts governs suit by New Hampshire resident against co-employee where injury took place in Maine while employed by Massachusetts corporation).

With regard to the maintenance of orderliness and good relations among the various states, the Court's independent research, *cited infra,* does not reveal any differences between Kentucky law and New Hampshire law relative to the issues now before the Court which would implicate a public policy of the Commonwealth of Kentucky. The franchisee herein was required by contract to purchase the Workers' Compensation and employer liability insurance necessary to protect both its and KFC's liability "as required by local law". Agreement ¶¶ X A, B. Defendant having required the purchase of insurance with an eye toward exposure to liability under the laws of New Hampshire, both interstate order and predictability of results would favor the application of New Hampshire law. *See Dunlap v. Aulson Corporation, supra* at 650. All remaining choice-influencing considerations being equal, New Hampshire law applies.

The parties have not cited, and the Court has not found, any New Hampshire cases dealing with a franchisor's liability to third parties injured on the franchisee's premises. Furthermore, this case is markedly different from the majority of cases reported, *see* Annot: Vicarious Liability of Private Franchisor, 81 A.L.R.3d 764 (1977), in that plaintiff herein does not seek to impose vicarious liability on KFC for its franchisee's negligence; rather, plaintiff asserts that KFC may be held primarily liable for its own negligent conduct.

Likening the franchisor-franchisee relationship to that between an employer and an independent contractor, KFC maintains that it has not, as a matter of law, retained sufficient supervisory control over the manner in which work has been done to be subject to primary liability for negligent exercise of that control. *See Coty v. U.S. Slicing Machine Company, Inc.,* 58 Ill. App.3d 237, 15 Ill.Dec. 687, 373 N.E.2d 1371

---

1. Both plaintiff's complaint and defendant's affidavit accompanying the Notice of Removal state that plaintiff was a New Hampshire resident at the time of the commencement of the action in 1982. There are no allegations pertaining to plaintiff's residence at the time of the injury in 1980.

(1978) ("*Coty*"); Restatement (Second) of Torts § 414 ("Restatement"). The Restatement provides in pertinent part:

> § 414. *Negligence in Exercising Control Regained by Employer*
>
> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

In *Coty, supra,* the Appellate Court of Illinois held as a matter of Illinois law that a franchisor who had retained only the general right to make suggestions, to inspect the premises, or to terminate the contract had not retained supervisory control within the meaning of § 414, and could not be held liable for an underage employee's on-the-job injuries. Similarly, defendant argues, KFC's Franchise Agreement gives KFC only a general right to inspect the premises or terminate the Agreement upon notice, *id.,* ¶ VI G (3), ¶ XII, and that KFC therefore cannot be held liable to plaintiff.

Although New Hampshire has yet to expressly adopt § 414, the New Hampshire Supreme Court has long treated "control" as a decisive factor in cases involving "employees of an otherwise independent contractor". *Continental Insurance Company v. New Hampshire Insurance Company,* 120 N.H. 713, 717, 422 A.2d 1309, 1311 (1980); *see Winslow v. Wellington,* 79 N.H. 500, 111 A. 631 (1920); *Paro v. Trust Co.,* 77 N.H. 394, 92 A. 331 (1914). Further, that Court has looked to related sections of the Restatement in analyzing the liability of an employer of an independent contractor. *See Carr v. Merrimack Farmers Exchange,* 101 N.H. 445, 146 A.2d 276 (1959) (liability of employer of independent contractor retained to perform work creating an unreasonable risk of bodily harm to others). It thus appears that the New Hampshire Supreme Court would look to § 414 in a case of this nature.[2] Summary judgment would not be appropriate on these facts, however. Unlike *Coty, supra,* the instrumentality alleged to have caused the injury in this case is one purchased with the approval, if not at the direction, of defendant.[3] The Agreement filed with the Court indicates the existence of a sophisticated system for selecting, approving, testing, recommending, and maintaining quality control over certain equipment. The Agreement obligates KFC to inform franchisees of proven methods of quality control. Moreover, that same Agreement provides that all franchisees must operate in conformity with a confidential operating manual, a manual which has not been provided to the Court. Both sets of provisions of the Agreement—the provisions pertaining to approved suppliers and the provisions pertaining to KFC's operating manual—themselves raise questions of material fact as to the degree of control or direction KFC retained over the equipment purchased by its franchisees and the franchisee operation as a whole.

General principles of tort law also militate against summary judgment in this instance. It is a basic principle of the applicable New Hampshire law that one who voluntarily undertakes to act may be liable to others for the negligent performance of the undertaking. *Corson v. Liberty Mutual*

---

**2.** The Kentucky courts have held that an employee of an independent contractor engaged in inherently dangerous work cannot hold the employer of the independent contractor liable for the negligence of the contractor under a nondelegable duty theory. *King v. Shelby Rural Electric Cooperative Corporation,* 502 S.W.2d 659 (Ky.1974). There the Kentucky Court of Appeals considered imposition of such liability to be contrary to the purposes of the Workers' Compensation Statute. The Supreme Court of Kentucky has subsequently held, however, that the employee of an independent contractor may sue an employer of that contractor for injuries resulting from the employer's own negligence. *Caskey v. Hammonds Construction, Inc.,* 536 S.W.2d 449 (Ky.1976).

**3.** The Approved Supplier System utilized by defendant is not unusual; it permits a franchisor to preserve the quality of product and/or good will associated with its trademark without running afoul of the antitrust laws. *See Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation,* 549 F.2d 368 (5th Cir.1977).

*Insurance Company,* 110 N.H. 210, 265 A.2d 315 (1970); *Smith v. American Employers' Insurance Company,* 102 N.H. 530, 163 A.2d 564 (1960) ("Smith"); *Pittsfield Cottonwear Manufacturing Co. v. Pittsfield Shoe Co.,* 71 N.H. 522, 53 A. 807 (1902); Restatement §§ 323, 324A.[4] "This liability extends to all who may fairly be said to come within the orbit of risk created by the actor's negligence". *Smith, supra* at 533, 163 A.2d at 567. The evidence, viewed in the light most favorable to plaintiff, is that defendant required franchisees to purchase only certain brands of equipment, that the Collectramatic pressure fryer was a recommended brand, that KFC reserved the right to review the quality of equipment on the approved supplier list, that KFC was told that the pressure fryer was defective and dangerous, and that KFC did not take the steps to remedy the situation. These facts, if proven, would support a finding that KFC, at a minimum, had a duty to warn. "The risk reasonably to be perceived defines the duty to be obeyed." *Corso v. Merrill,* 119 N.H. 647, 651, 406 A.2d 300, 303 (1979), *quoting Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928); *see also Spherex, Inc. v. Alexander Grant & Company,* 122 N.H. ——, 451 A.2d 1308, 1312 (1982).

Accordingly, the motion for summary judgment must be and herewith is denied.

SO ORDERED.

---

4. *Smith, supra,* and *Corson, supra,* arose in the context of workers' compensation cases, and their effect in that field has been abrogated by amendments to the statute, which now bars actions against an insurance carrier. *See* N.H. RSA 281:12–I (Supp.1981). The applicable principle of New Hampshire law remains pertinent as stated herein, however. *See Irving v. United States,* 532 F.Supp. 840, 845 (D.N.H. 1982).

The Kentucky courts likewise impose liability for negligent performance of a gratuitous undertaking. "[A] duty voluntarily assumed cannot be carelessly abandoned without incurring liability for injury resulting from the abandonment." *Johnson v. Brey,* 438 S.W.2d 535, 536 (Ky.1969); *Louisville Cooperage Co., Inc. v. Lawrence,* 313 Ky. 75, 230 S.W.2d 103, 105 (1950).