Susan Jacobs SMITH, Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

No. C–74–262–D.

United States District Court,
M. D. North Carolina,
Durham Division.

March 3, 1976.

**1212**

E. K. Powe, J. G. Billings, and Charles R. Holton, Durham, N. C., for plaintiff.

James L. Newsom, E. C. Bryson, Jr., and James M. Tatum, Jr., Durham, N. C., for defendant.

## MEMORANDUM AND ORDER

GORDON, Chief Judge.

The plaintiff Susan Jacobs Smith asserts that she was seriously injured in June, 1973, while working as an employee in a textile plant owned and operated by Collins and Aikman Corporation. She alleges the following:

(1) that her hair was caught in a drive-shaft of a loom and that the rotation of the shaft pulled the hair from her head inflicting serious and grievous injuries;

(2) that the defendant Liberty Mutual Insurance Company, the workmen's compensation carrier for Collins and Aikman, undertook or should have undertaken safety inspections of the plant in which she worked;

(3) that the uncovered drive-shaft was hazardous and unsafe; and

(4) that Liberty Mutual was negligent in that it failed in its duty to see that this hazardous and unsafe working condition was corrected.

She, therefore, seeks recovery of compensatory damages, the costs she has incurred in bringing this action, and such other relief as the Court may deem just and proper.

The defendant Liberty Mutual asserted six defenses in its answer to plaintiff Smith's complaint. One of the defenses (the third defense) challenged the plaintiff's interpretation of the North Carolina Workmen's Compensation Act. The plaintiff moved, in timely fashion, to have the Court strike that defense, and the defendant, in turn, moved for summary judgment in its favor on the basis that the defense in question barred the plaintiff from recovery as a matter of law. Briefs were filed to support the contentions of the parties, and a hearing was held in order to permit counsel to further state their positions on the matter.

The question at issue is relatively simple to set forth but, for all its simplicity, is difficult to resolve. Under the provisions of the North Carolina Workmen's Compensation Act, is a workmen's compensation insurance carrier to be considered as an "employer" or a "third party" for the purpose of deciding whether recovery can be had under common law against the carrier by an injured worker?

This question in a similar context first appeared in the 1960 New Hampshire case of *Smith v. American Employers' Insurance Co.*, 102 N.H. 530, 163 A.2d 564 (1960).[1] Although this issue has been the focus of opinions in many jurisdictions during the intervening decade and a half, the present case is one of first impression here in North Carolina. Since the provisions of workmen's compensation statutes vary considerably from state to state, it is necessary to consider the specific terms of the North Carolina act. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The North Carolina Workmen's Compensation Act is set forth in Chapter

---

1. In the New Hampshire case the plaintiff had lost her legs as the result of an explosion allegedly due to the negligence of the insurance carrier in making safety inspections, a function which it had assumed. The court held that an action could lie against the carrier, that it could be sued as a third party when the other facts necessary to liability were present.

97 of the state's General Statutes. Like similar statutes in sister states, North Carolina's act is designed to provide for the clear and certain resolution of claims of employees against their employers when an employee is injured in the course of employment. The act serves to provide ready compensation for injured employees and to limit the possible liability faced by employers. *Barnhardt v. Yellow Cab Company*, 266 N.C. 419, 146 S.E.2d 479 (1966). The act is designed to replace common law rights of action by injured employees against their employers. *Branham v. Denny Roll and Panel Co.*, 223 N.C. 233, 25 S.E.2d 865 (1943). The courts of North Carolina have consistently held that the provisions of the act must be liberally construed to achieve its purpose to provide compensation for injured employees or their dependents, and, to that end, the courts have insisted that its benefits should not be denied by a technical or narrow construction of the language of the statute. *Hollman v. City of Raleigh*, 273 N.C. 240, 159 S.E.2d 874 (1968); *Keller v. Electric Wiring Co.*, 259 N.C. 222, 130 S.E.2d 342 (1963); *West v. J. P. Stevens Co.*, 12 N.C.App. 456, 183 S.E.2d 876 (1971).

There are various sections of Chapter 97 which the parties assert are relevant and material to the question under consideration. They are as follows in the order of their appearance in the statute and as worded at the time of the events under consideration:

"§ *97–2. Definitions.*—When used in this Article, unless the context otherwise requires . . ..

"(3) Employer.—The term "employer" means the State and all political subdivisions thereof, all public and quasi-public corporations therein, every person carrying on any employment and the legal representative of a deceased person or the receiver or trustee of any person. The board of commissioners of each county of the State, for the purposes of this law, shall be considered as "employer" of all deputy sheriffs serving within such county, or persons serving or perform-

ing the duties of a deputy sheriff, whether such persons are appointed by the sheriff or by the board of commissioners and whether serving on a fee basis or salary basis. Each county is authorized to insure its compensation liability for deputy sheriffs to the same extent it is authorized to insure other compensation liability for employees thereof: Provided, that the last two sentences herein shall not apply to Alleghany, Avery, Bladen, Carteret, Cherokee, Gates, Hyde, Macon, Pender, Perquimans, Union, Watauga and Wilkes Counties. . . .

"(7) Carrier.—The term "carrier" or "insurer" means any person or fund authorized under G.S. 97–93 to insure under this Article, and includes self-insurers. . . .

"§ *97–9. Employer to secure payment of compensation.*—Every employer who accepts the compensation provisions of this Article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he or those conducting his business shall only be liable to any employee who elects to come under this Article for personal injury or death by accident to the extent and in the manner herein specified.

"§ *97–10.1. Other rights and remedies against employer excluded.*—If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

"§ *97–10.2. Rights under Article not affected by liability of third party; rights and remedies against third parties.*—(a) The right to compensation and other benefits under this Article for disability, disfigurement, or death shall not be affected by the fact that

the injury or death was caused under circumstances creating a liability in some person other than the employer to pay damages therefor, such person hereinafter being referred to as the 'third party.' The respective rights and interests of the employee-beneficiary under this Article, the employer, and the employer's insurance carrier, if any, in respect of the common-law cause of action against such third party and the damages recovered shall be as set forth in this section.

"(b) The employee, or his personal representative if he be dead, shall have the exclusive right to proceed to enforce the liability of the third party by appropriate proceedings . . . .

"(f)(1) If the employer has filed a written admission of liability for benefits under this Chapter with, or if an award final in nature in favor of the employee has been entered by, the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority: . . .

"c. Third to the reimbursement of the employer for all benefits by way of compensation or medical treatment expense paid or to be paid by the employer under award of the Industrial Commission.

"d. Fourth to the payment of any amount remaining to the employee or his personal representative. . .

"(g) The insurance carrier affording coverage to the employer under this Chapter shall be subrogated to all rights and liabilities of the employer hereunder but this shall not be construed as conferring any other or further rights upon such insurance carrier than those herein conferred upon the employer, anything in the policy of insurance to the contrary notwithstanding. . . .

"§ 97–93. *Employers required to carry insurance or prove financial ability to pay for benefits.*—Every employer who accepts the provisions of this Article relative to the payment of compensation shall insure and keep insured his liability thereunder in any authorized corporation, association, organization, or in any mutual insurance association formed by a group of employers so authorized, or shall furnish to the Industrial Commission satisfactory proof of his financial ability to pay direct the compensation in the amount and manner and when due, as provided for in this Article. In the latter case the Commission may require the deposit of any acceptable security, indemnity or bond to secure the payment of the compensation liabilities as they are incurred.

§ 97–94. *Employers required to give proof within 30 days that they have complied with preceding section; fine for not keeping liability insured; review; liability for compensation; failure to secure payment of compensation a misdemeanor.*—(a) Every employer accepting the compensation provisions of this Article shall, within 30 days, after this Article takes effect, file with the Commission, in form prescribed by it, and thereafter, annually or as often as may be necessary, evidence of his compliance with the provisions of G.S. 97–93 and all others relating thereto. . . ."

The key provisions of the act among those set forth above are §§ 97–9, 97–10.1, and 97–10.2, and the definitions given in § 97–2(3) and (7). These provisions, viewed together, make the remedies available to an injured employee under the North Carolina statute the only remedies which the plaintiff Smith has against her employer or against "those conducting his [the employer's] business." (§§ 97–9, 97–10.1) The act insures that an injured employee's common law right to sue persons other than the employer remains fully in effect. (§ 97–10.2)

■ Further, the North Carolina statute specifically, and in considerable detail, defines "employer" in § 97–2(3). The employer's insurance carrier is not mentioned in that definition. Indeed, "carrier" is separately defined in § 97–2(7). For the purposes of this act, a workmen's compensation insurance carrier must be treated as an entity separate and apart from the employer who has the policy with the carrier.

Therefore, in considering these sections of the statute, it is clear that the only way the defendant Liberty Mutual can be automatically exempt from potential common law liability in this case is for it to fall within the protection of the phrase "those conducting his [the employer's] business" in § 97–9. The courts of North Carolina have read § 97–9 in conjunction with § 97–10.1 to find that the immunity from common law actions granted the employer in § 97–10.1 extends to those conducting his business. Employees, officers, and agents of the employer have all been found to be protected from common law liability because they have been conducting the employer's business. *Essick v. Lexington*, 232 N.C. 200, 60 S.E.2d 106 (1950); *Altman v. Sanders*, 267 N.C. 158, 148 S.E.2d 21 (1966). However, an independent contractor, performing construction on the employer's premises but otherwise having no connection with the employment relationship, was found not to be "conducting" the business of the employer and, therefore, was not protected from an action by an injured employee brought under § 97–10.2. *Lewis v. Barnhill*, 267 N.C. 457, 148 S.E.2d 536 (1966).

Although there are no North Carolina cases which directly address the issue of insurance carrier as one conducting the business of the employer, two opinions do include language which must be considered. In *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E.2d 886 (1953), the Supreme Court of North Carolina considered a factual situation wherein an injured employee was suing a third party for negligence and the third party sought to have joined the employer and the employer's workmen's compensation insurance carrier, alleging that the negligence of the employer contributed to the injuries suffered by the employee. No allegation was made that the insurance carrier was actively negligent in any manner itself. The court dismissed the employer from the suit on the basis of the immunity provided by § 97–10. In proceeding to dismiss the carrier from the suit, the court stated:

> "Since the Guaranty Company [the carrier] was not an actor in the events resulting in personal injury to the Plaintiff, it has committed no tort against him, and cannot be adjudged liable to the Plumbing Company as a joint tort-feasor for either contribution or indemnity." 236 N.C. at 671, 73 S.E.2d at 893.

While the carrier was dismissed from the suit since no allegation of negligence was made against it by the defendant third party, the language used by Mr. Justice Ervin in *Lovette* can be construed to imply that if the carrier had participated in the events resulting in the personal injury and if the carrier had actually committed a tort against the employee, then it would have been subject to lawsuit. Such an interpretation is clearly consistent with the language of the opinion.

In the case of *Long v. Coble*, 11 N.C. App. 624, 182 S.E.2d 234 (1971), Judge Mallard states that § 97–10.2 "was enacted to protect the employee, employer, and the employer's workmen's compensation carrier." Taken out of context, this statement would appear to support the contention of the defendant that it should be protected from third party liability and that, although insurance carriers are not specifically exempted by name, this is the position that has been taken by the North Carolina courts. A closer look at the facts of the *Long* case, however, reveals that a less sweeping conclusion is permitted.

In *Long* the administrator of a deceased employee's estate sought to recover under § 97–10.2 from the driver of a truck which was involved in the collision

that led to the employee's death. The defendants replied by asserting as a plea in bar that the deceased employee's employer and the employer's insurance company had already compensated the employee's estate for the loss, that neither the employer nor the carrier were parties to the suit, and that, therefore, under another provision of § 97–10.2 the administrator of the deceased's estate was barred from maintaining the suit. Plaintiff sought to amend his complaint, adding the employer and the carrier as co-plaintiffs. This motion to amend was denied by Judge Hobgood of the Superior Court. The North Carolina Court of Appeals reversed. Judge Mallard was, therefore, referring to this fact situation when he wrote:

> "G.S. § 97–10.2 was not enacted to enable a third party tort-feasor to defeat a lawful claim. It was enacted to protect the employee, employer, and the employer's workmen's compensation carrier. This interpretation of the purpose of the act is supported by the provisions of G.S. 97–10.2(h)." 182 S.E.2d at 238.

Judge Mallard was not addressing the situation presented here by plaintiff Smith, where she asserts that the carrier was the negligent third party.

■ Neither the *Lovette* nor the *Long* cases, therefore, provide clear, unambiguous guidance from the North Carolina courts on the question raised by plaintiff Smith in the present case. In both cases, however, it is important to note that the opinions construed the statute in a light that was favorable to the plaintiff-employee and detrimental to the allegedly negligent third party. There is nothing in the record of this case to date to suggest that the defendant Liberty Mutual was operating as an employee or agent of Collins and Aikman Corporation, for purposes of insuring safe working conditions in the corporation's textile plant. The mere fact that the defendant served as the corporation's workmen's compensation carrier does not, of course, establish either that the carrier was conducting the corporation's business or that the carrier was, indeed, liable for the injuries suffered by the plaintiff Smith. Whether there was negligence and whether there was an agency or employee relationship are both questions of fact which it would be premature for this Court to resolve on the basis of the motions now before it.

In addition to the sections of the statute and the cases just discussed, the defendant Liberty Mutual points to other provisions of the North Carolina Workmen's Compensation Act to support its position that it cannot be reached under § 97–10.2. An employer may either contract with an insurance carrier for workmen's compensation coverage (as Collins and Aikman did here) or, if it meets the statutory requirements, an employer may serve as its own self-insuror. Under §§ 97–93 and 97–94 this means that an employer serving as his own self-insuror retains the duty of inspecting and assuring the safety of the instrumentalities of his business. The courts of North Carolina have consistently held that if such an employer is found to have breached his duty and injury to an employee has resulted, then the employee has no common law remedy against the employer but is, instead, limited to the recovery permitted by the act. *Lee v. American Enka Corp.*, 212 N.C. 455, 193 S.E. 809 (1937); *Murphy v. American Enka Corp.*, 213 N.C. 318, 195 S.E. 536 (1938); *Jenkins v. American Enka Corp.*, 95 F.2d 755 (4th Cir. 1938). To permit common law claims against an insurance carrier under a comparable fact situation would, the defendant asserts, create an anomalous result. Yet, as already discussed in relationship to §§ 97–9 and 97–10.1, the state courts have held that the legislature intended to distinguish between injuries caused by employees of an employer and those caused by independent third parties. *Lewis v. Barnhill, supra.* There is no case law to suggest that this distinction was not also intended in cases where independent insurance carriers were involved instead of self-insured employers.

■ Considerable care must be taken by a court in interpreting statutory lan-

guage. In considering a question such as the one raised in this case, it is especially important to heed the advice of the late Justice Felix Frankfurter:

"One more caution is relevant when admonished to listen attentively to what a statute says. One must also listen attentively to what it does not say." [2]

Applying Mr. Justice Frankfurter's admonition to the question of whether or not an injured employee can maintain a common law action for negligence against the employer's workmen's compensation carrier, leads to the straightforward and logical conclusion that such a cause of action is permitted under the terms of the North Carolina statute.

The act replaces common law relationships between an injured employee and his or her employer. It requires that employers have workmen's compensation insurance, either as self-insurors or through an independent insurance carrier. It leaves the employee with a right to common law actions against third parties other than the employer or the employer's officers and employees. Insurance carriers who are negligent and whose negligence causes injury to employees of a company the carrier covers are not exempted from common law actions by the statute. The silence of the North Carolina Workmen's Compensation Act on this point speaks for itself. Further to permit employee claims against a carrier on the grounds of negligence is consistent with the general position of the courts of North Carolina that the provisions of the act are to be liberally construed to protect injured employees. *Hall v. Thomason Chevrolet, Inc.*, 263 N.C. 569, 139 S.E.2d 857 (1965).

The defendant asserts, however, that this interpretation runs counter to the subrogation provision of the act as set forth in § 97–10.2(g). This assertion is cogently rebutted by Professor Arthur Larson, a noted authority on workmen's compensation:

"Another argument extensively exploited in decisions barring third party suits against carriers runs like this: The carrier is subrogated to the injured employee's cause of action against a third party tort feasor; if the carrier can be a third party tort feasor, the carrier will end by suing itself and the Legislature could not have intended such a 'ludicrously incongruous' result. This argument has been rejected on several grounds by courts finding carrier liability. . . All such cases have made short work of the specter of double recovery by pointing out that the carrier would, of course, be entitled to set off in a judgment against itself as tort feasor in the amount of compensation paid by it as insurance carrier. And, running through all these opinions was the thought that this kind of result was really not all that preposterous. By now the law is becoming quite accustomed to apparent incongruities of this kind, what with corporations, insurers, and even individuals 'wearing different hats.' Increasingly common is the spectacle of an insurance carrier acting as a compensation subrogation plaintiff and as defendant insurer on a third party's automobile liability risk. Problems of conflict of interest and of public policy may arise, but no one worries much any more about the conceptual problem of whether the carrier can sue itself. The present issue is not essentially different once it is recognized that the compensation carrier is being sued not as compensation carrier, but as clinic operator or safety inspection service, in which roll it is just as differentiable as the automobile liability insurer." (Citations omitted.) [3]

Because the issue of insurance carrier liability as a third party is one of first impression under North Carolina law,

2. Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 536 (1947).

3. Larson, *Workmen's Compensation Insurer as Suable Third Party*, 1969 Duke L.J. 1117, 1129–1131.

each party cites cases from other jurisdictions to support its interpretation of the provisions of the North Carolina Workmen's Compensation Act. It is difficult, if not impossible, to discern any clear "majority rule" from these opinions.

In some states the matter has been resolved by interpreting statutes that have themselves been far more explicit on this point than is the North Carolina act. In a number of these states the controlling statute specifically equates employers and insurance carriers so as to remove both from third party, common law liability.[4]

In those states having statutes similar to the North Carolina act (in that they do not explicitly equate employers and carriers for purposes of removing both from third party liability), there has been a split in judicial opinions. Some courts have gone to great lengths to read into the applicable statutes a proscription against third party, common law liability for carriers, even when the statutes have been seemingly silent on this point.[5] Other courts have found liability, concluding that if carriers are to be protected like employers it is up to the legislature to say so unambiguously.[6] In a number of states this position by the courts has led to legislative action amending the relevant portions of the workmen's compensation acts so as to exempt insurance carriers from liability as third parties.[7] In other states, there has been no subsequent legislative action and, therefore, carriers have remained subject to liability as third parties.

Returning to the case at hand, a prudent adherence to a policy of judicial restraint supports a finding that insurance carriers are not exempt from third

---

4. These states include Delaware [Del.Code Ann., tit. 19, § 2301 (1975)]; Georgia [Ga.Code Ann. § 114–101 (1956)]; Hawaii [Hawaii Rev. Stat. § 386–1 (1968)]; Illinois [Ill.Rev.Stat. ch. 48, § 138.5 (1969) as amended Pub.Act No. 78–1297 § 58 (March 4, 1975)]; Indiana [Ind. Ann.Stat. § 40–1205 (1965)]; Maine [Me.Rev. Stat.Ann., tit. 39, § 2(6) (1965)]; Nebraska [Neb.Rev.Stat. § 48–111 (1968)]; New Hampshire [N.H.Rev.Stat.Ann. § 281:2 (1966)]; New Mexico [N.M.Stat.Ann. § 59–10–4(D) (1974)]; Oregon [Or.Rev.Stat. § 656.018(3) (1974)]; Pennsylvania [Pa.Stat.Ann., tit. 77, § 501 (1975)]; South Dakota [S.D.Comp.Laws Ann. § 62–1–2 (1969)]; Tennessee [Tenn.Code Ann. § 50–902(a) (1966)]; Texas [Tex.Rev.Civ.Stat. Ann. art. 8306, § 3 (1967)]; Vermont [Vt.Stat. Ann., tit. 21, § 601(3) (1967)]; Virginia [Va. Code Ann. § 65–3 (1950)]; and Wisconsin [Wis.Stat.Ann. §§ 102.03(2) and 102.29(1) (1973) and § 895.44 (1966)].

5. See Bartolotta v. U. S., 276 F.Supp. 66 (D.Conn.1967); Donohue v. Maryland Casualty Co., 363 F.2d 442 (4th Cir. 1966), aff'g. for reasons in opinion below 248 F.Supp. 588 (D.Md.1965); Matthews v. Liberty Mut. Ins. Co., 354 Mass. 470, 238 N.E.2d 348 (1968); Madjeski v. Atwell, Vogel and Sterling, Inc., 309 F.Supp. 119 (D.Minn.1969); U. S. Fidelity and Guaranty Co. v. Theus, 493 P.2d 433 (Okl. 1972); Mustapha v. Liberty Mut. Ins. Co., 387 F.2d 631 (1st Cir. 1967), aff'g. 268 F.Supp. 890 (D.R.I.1967); Horne v. Security Mut. Casualty Co., 265 F.Supp. 379 (D.Ark.1967).

6. See Beasley v. McDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971); Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964), rev'g. 39 Ill.App.2d 73, 187 N.E.2d 425 (1963); Fabricus v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.E.2d 361 (1963); Bryant v. Old Republic Ins. Co., 431 F.2d 1385 (1970), rev'g. 325 F.Supp. 241 (W.D. Ky.1970); Ray v. Transamerica Ins. Co., 10 Mich.App. 55, 158 N.W.2d 786 (1968); Ruth v. Bituminous Casualty Corp., 427 F.2d 290 (6th Cir. 1970); Stacy v. Aetna Casualty and Surety Co., 334 F.Supp. 1216 (N.D.Miss.1971), rev'd on other grounds 484 F.2d 289 (5th Cir. 1973); Corson v. Liberty Mut. Ins. Co., 110 N.H. 210, 264 A.2d 315 (1970); Mays v. Liberty Mut. Ins. Co., 323 F.2d 174 (3d Cir. 1963) rev'g. 211 F.Supp. 541 (E.D.Pa.1962).

7. The provisions in the statutes cited in footnote 4 for Illinois, New Hampshire, and Michigan were all added by the respective state legislatures in an effort to protect insurance carriers subsequent to court decisions which had held the carriers liable as third parties. This has not ended the matter, however. The New Hampshire Supreme Court (where the issue was first addressed in 1960) has held that even under the amended state statute insurance carriers can be held liable as third parties if it can be shown that they were negligent in carrying out safety inspections when the inspections were not required by law but were offered as an inducement to encourage an employer to purchase coverage from the carrier. Corson v. Liberty Mutual Ins. Co., 110 N.H. 210, 265 A.2d 315 (1970).

party liability in North Carolina. To hold otherwise would be to invade the province of the legislature. Had it been the design of the General Assembly when it enacted the statute to exempt insurance carriers from third party, common law liability, it should have done so expressly or by unmistakable inference. If workmen's compensation insurance carriers are to be so protected in North Carolina, it is up to the legislature to so indicate, and not the courts. The plaintiff's motion to dismiss this defense of the defendant, therefore, should be allowed.

The defendant moved for summary judgment both on the grounds that this defense constituted a defense at law to the claims of the plaintiff and also, as to Count II in the original complaint, on the grounds that Count II alleged a breach of contract when no such breach had occurred. In support of its position, the defendant has submitted a copy of its contract with Collins and Aikman Corporation that covered the plant in question and an affidavit by the carriers' agent who serves as Claims Manager for the region which includes the plant. Plaintiff, in turn, opposed the motion for summary judgment as to Count II and moved to strike the concluding paragraph of the agent's affidavit. That paragraph reads:

"In respect to the performance by Liberty Mutual Insurance Company of any safety inspections in respect to the plants and facilities of Collins and Aikman Corporation, to my knowledge the Workmens Compensation and Employers Liability Policy Contract attached hereto as Exhibit 'A', was the only contract of any kind, written or otherwise, in effect as between Liberty Mutual Insurance Company and Collins

and Aikman Corporation as of the date of Plaintiff's injury on June 8, 1973; and the service of Liberty Mutual Insurance Company in respect to any safety inspections of plants or facilities of Collins and Aikman Corporation was as reflected only by Paragraph 4 of the Conditions as appearing on Page 2 of such Workmens Compensation and Employers Liability Policy attached hereto as Exhibit 'A'."

■ In this affidavit the Claims Manager is merely setting forth what to his own personal knowledge was the contractual relationship between the defendant and the plaintiff's employer. While this information is clearly relevant to the issues raised in Count II, and therefore should not be stricken as requested by plaintiff, it is not conclusive as to whether or not the defendant did breach a contractual duty. It would be premature, therefore, to grant partial summary judgment as to Count II of the complaint at this time.

### ORDER

For the reasons set forth in the accompanying Memorandum, it is ORDERED that the plaintiff's motion to dismiss the third defense of the defendant shall be and hereby is granted, and that the defendant's motion for summary judgment based upon the third defense shall be and hereby is denied.

FURTHER, it is ORDERED that the defendant's motion for partial summary judgment as to Count II of the plaintiff's original complaint and the plaintiff's motion to strike the concluding paragraph of the defendant's claim manager's affidavit in support of the motion for partial summary judgment shall be and hereby are denied.