OPINION OF THE COURT
David O. Boehm, J.
The issue on this motion for summary judgment is apparently one of first impression in New York and raises the question of whether an employee who is injured in the course of his employment may maintain a common-law action for negligence against his employer’s workers’ compensation insurance carrier for negligent inspection. The answer, of course, depends on whether the insurance carrier is cloaked with the same immunity from suit as the employer under the Workers’ Compensation Law.
The pertinent facts are undisputed. Plaintiff, Robert H. Cline, while grinding filet welds at Pfaudler Company where he was employed, sustained serious facial injuries and the loss of vision in his left eye when the abrasive wheel on the portable hand grinder he was using shattered.
A compensation claim was filed and defendant, Hartford Accident & Indemnity Co. [hereinafter Hartford], Pfaudler’s compensation carrier, commenced compensation insurance payments retroactive to the date of the accident. Ultimately, plaintiff was awarded and paid a total of $13,067 over a 160-week period for loss of vision in his left eye and $3,500 for serious facial disfigurement.
Thereafter, plaintiff commenced the present personal injury action against Hartford, among others, alleging that Hartford conducted periodic safety inspections of the Pfaudler plant and equipment and that these inspections were conducted in the presence of and in association with the employer’s personnel.
Among other allegations of negligence, plaintiff claims that *261 Hartford failed to make reasonable inspections to observe and report unsafe conditions and to warn of the defects and hazards involving the use of the abrasive wheel and portable grinder, including the fact that it was not equipped with a safety guard or other appropriate safety devices.
Hartford is now moving for summary judgment to dismiss the complaint on the ground that a workers’ compensation carrier is not "another not in the same employ” within the meaning of subdivision 1 of section 29 of New York’s Workers’ Compensation Law, which provides: "If an employee entitled to compensation under this chapter be injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in the case of his death, his dependents, need not elect whether to take compensation and medical benefits under this chapter or to pursue his remedy against such other but may take such compensation and medical benefits and at any time either prior thereto or within six months after the awarding of compensation or within nine months after the enactment of law or laws creating, establishing or affording a new or additional remedy or remedies, pursue his remedy against such other subject to the provisions of this chapter.”
Hartford argues that, as the employer’s alter ego, it is cloaked with the employer’s immunity from common-law tort under section 11 of the Workers’ Compensation Law which provides that the employer’s sole liability is to provide or secure compensation for an employee’s disability or death, as follows: "The liability of an employer * * * shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death”.
Subdivision 6 of section 29 of the Workers’ Compensation Law also provides that an employee’s remedy under this chapter is exclusive. "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in the case of death his dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ.”
In resolving the present motion there are two issues confronting the court: (1) whether the Workers’ Compensation Law poses a legal impediment to suit against a compensation *262 carrier; and (2) if not, whether plaintiff has set forth a cause of action in negligence against Hartford.
While the issue of compensation carrier immunity has not been addressed in New York, other jurisdictions have already responded to it, and three avenues resolving this question can be discerned.
Several States have provided in their workmen’s compensation laws that the employer and issuance carrier are to be similarly considered for most or all purposes, thereby immunizing the carrier, along with the employer, from common-law liability.[1]
The workmen’s compensation laws in most States, however, such as New York, have not directly addressed the issue and as a consequence the question of carrier immunity in these jurisdictions has been left for the courts to resolve. Here, there is a split of authority, with no clear majority for either position. The decisions have been based upon the court’s analysis of the legislative intent and the public policy which it appeared was intended to be served.
As a result, the interpretations of what is substantially similar statutory language have gone both ways. Some have decided in favor of carrier immunity[2] and others have con- *263 eluded that in the absence of clear statutory language cloaking the carrier with the employer’s immunity there is a manifest legislative intent that the carrier be treated the same as any other third party.[3]
Because the guideposts, although abundant, are conflicting, and with no guidance or direction from other New York case law, the question before this court is which direction to take. In deciding, it is necessary to emphasize that the question is not whether an injured employee should be permitted to sue his employer’s compensation carrier in common-law negligence but, rather, whether the New York legislative intent, as expressed in this State’s Workers’ Compensation Law, is to cloak the carrier with the employer’s immunity. In short, the decision must be based upon legislative, rather than judicial, policy.
Hartford’s basic argument is that legislative intent, considered in the light of general statutory language and policy considerations, requires the holding that a compensation carrier must be equated in the statute with the employer and is therefore immune from common-law liability (see, e.g., Johnson v American Mut. Liab. Ins. Co., 559 F2d 382, 387, supra). Further, Hartford argues, the carrier should be immune from liability whether it is acting in a manner directly related to its contractual role as the compensation carrier, such as by paying claims, or whether its actions are ancillary to its contractual role, such as by making safety inspections.
It is the plaintiff’s position that neither statutory language nor policy reasons compel a holding which would grant immunity to a compensation insurance carrier.
Under the New York Workers’ Compensation Law, the remedies of employees against employers and the benefits provided therein are exclusive (NY Const, art 1, § 18; Cifolo v General Elec. Co., 305 NY 209, 214-215; Shanahan v Monarch Eng. Co., 219 NY 469). The statute’s primary purpose is to compensate an employee and his family from loss of wages *264 and disability resulting from accidental injuries or death arising out of his employment regardless of fault (Matter of Goldberg v 954 Marcy Corp., 276 NY 313; Matter of Marhoffer v Marhoffer, 220 NY 543). The statute is liberally construed to effectuate this purpose (65 NY Jur, Workmen’s Compensation, § 55, pp 398-400, and cases cited therein), and, generally, a presumption operates in favor of the claimant (Matter of Wilson v General Motors Corp., 298 NY 468).
In construing the Workers’ Compensation Law, the Court of Appeals has stated that all parts of the statute must be considered together in order to ascertain legislative intent and to further the legislative purpose, the object being to avoid injustice and unintended effects (Juba v General Bldrs. Supply Corp., 7 NY2d 48, 53; 65 NY Jur, Workmen’s Compensation, § 54, supra; see, also, Essenfeld Bros, v Hostetter, 14 NY2d 47, 52). This is especially so where the statutory language is ambiguous or unclear (Matter of Toomey v New York State Legislature, 2 NY2d 446, 448; Matter of Gawrys v Buffalo Bolt Co., 302 NY 312, 317; Matter of Curtin v City of New York, 287 NY 338, 342; Travelers Ins. Co. v Padula Co., 224 NY 397, 402-403).
Turning to the relevant statutory provisions of the New York Workers’ Compensation Law, it is evident that the language is not unclear and not ambiguous and, therefore, leaves little room for interpretation by a court. The statutory definition of employer under subdivision 3 of section 2 of the Workers’ Compensation Law as conceded by Hartford, does not include an insurance carrier. " 'Employer,’ except when otherwise expressly stated, means a person, partnership, association, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation having one or more persons in employment, including the state, a municipal corporation, fire district or other political subdivision of the state, and every authority or commission heretofore or hereafter continued or created by the public authorities law.” (Emphasis supplied.)
The definition of employer is carefully qualified by the phrase "except when otherwise expressly stated”. Admittedly, in particular instances throughout the statute this definition of employer is not exclusive, but the exceptions are contained in the specific provisions and in no instance is an insurance *265 carrier included in these exceptions (65 NY Jur, Workmen’s Compensation, §§ 114, 115, pp 537-539, supra).
An insurance carrier is also defined by subdivision 12 of section 2 of the Workers’ Compensation Law as follows: " 'Insurance carrier’ shall include the state fund, stock corporations, mutual corporations or reciprocal insurers with which employers have insured, and employers permitted to pay compensation directly under the provisions of subdivisions three, three-a or four of section fifty.”
The terms "employer” and "insurance carrier” are, in most cases, set out separately and referred to as separate entities in the various sections throughout the chapter (see, e.g., § 13, subds [a], [b], [c], [d]; § 13-a, subds [1], [2], [3], [4], [5], [6]; § 13-f, subd [2]; § 13-g, subds [1], [2], [3], [5]; § 14-a, subds 1, 2; §§ 18, 26, 28, 34, 44, 45, 50, 53, 54 subds 1, 2, 3; and § 56). Those sections in which the employer and insurance carrier are mentioned together, such as those dealing with notice of injuries, claims and enforcement of awards, liens and judgments, are essentially procedural provisions which relate to the payment of compensation and do not alter substantive rights (see, e.g., Workers’ Compensation Law, §§ 54 and 54-b; see, also, Larson, Workmen’s Compensation Insurer as Suable Third Party, 1969 Duke LJ 1117, 1127, and cases cited therein; but cf. Johnson v American Mut. Liab. Ins. Co., 559 F2d 382, 388-390, supra).
Given this clear and unambiguous statutory language, which carefully defines and qualifies the words "employer” and "insurer”, as well as the statutory schemata and the decisional law circumscribing interpretation of the Workers’ Compensation Law, it becomes apparent that an insurance carrier may not be equated with an employer for purposes of immunity (cf. Matter of Toomey v New York State Legislature, 2 NY2d 446, 448, supra).
The Court of Appeals in interpreting the Workers’ Compensation Law has repeatedly cautioned that courts must interpret the statute as it is written and not extend it to what courts think it should be (Taylor v New York Cent. R. R. Co., 294 NY 397, 402; Matter of Russomanno v Leon Decorating Co., 306 NY 521, 524; Matter of Croce v Ford Motor Co., 307 NY 125, 131; Matter of Paider v Park East Movers, 19 NY2d 373, 380; see, also, 56 NY Jur, Statutes, § 113, pp 592-593).
Other jurisdictions which have excluded an insurance carrier from the employer’s immunity have done so on the *266 similar ground that an insurance carrier was not included in the exclusive remedy provisions of the respective statutes (see, e.g., Beasley v MacDonald Eng. Co., 287 Ala 189, supra; Nelson v Union Wire Rope Corp., 31 Ill 2d 69, supra; Fabricus v Montgomery Elevator Co., 254 Iowa 1319, supra; Smith v American Employers’ Ins. Co., 102 NH 530, supra). Indeed, unlike New York, the workmen’s compensation laws of those jurisdictions did not contain the specific definitional provisions for employer and insurance carrier.
As an example of the reasoning applied in so doing, one court stated:
"We think it clear that these sections do not reflect a legislative intent to place primary liability for compensation upon the insurer, or to permit the liability of the insurer to be substituted for the liability of the employer. In the first place, the sections simply do not deal with the subject matter * * *
"The insurer is substituted for the employer, not as to the liability for and duty to secure compensation placed solely upon the employer * * * but only with respect to notice, jurisdiction and compliance with commission orders. * * *
"We conclude there is nothing in the Florida act which reflects a legislative intent to equate the employer and the employer’s insurer for all purposes, particularly as to immunity from suit as a third-party tort-feasor, or, to state the proposition from another perspective, we find nothing in the act which serves to deprive an injured employee or his dependents of a common-law action against the employer’s compensation carrier.” (Nelson v Union Wire Rope Corp., 31 Ill 2d 69, 106-108, supra.)
Additionally, the general rule in New York is that the common law is not changed by implication simply because a statute has been enacted in a particular area of the law (McKinney’s Cons Laws of NY, Book 1, Statutes, § 301, subd b; 56 NY Jur, Statutes, § 114, pp 593-594, and § 194, pp 652-653, supra). As a Federal court in North Carolina stated in construing provisions quite similar to New York’s: "Had it been the design of the General Assembly when it enacted the statute to exempt insurance carriers from third party, common law liability, it should have done so expressly or by unmistakable inference.” (Smith v Liberty Mut. Ins. Co., 409 F Supp 1211, 1219, supra.)
Thus, an employee may sue an employer and a coemployee for intentional wrongs (65 NY Jur, Workmen’s Compensation, *267 § 83, pp 456-457, and § 105, p 508, supra). Nor does the Workers’ Compensation Law bar a negligence action by an employee of a subcontractor against the primary contractor (65 NY Jur, Workmen’s Compensation, § 161, pp 609-613, supra). An employee may maintain a malpractice action against a doctor or a compensation insurance carrier which employs a doctor for aggravation of injuries sustained in an industrial accident (Matter of Parchefsky v Kroll Bros., 267 NY 410; 65 NY Jur, Workmen’s Compensation, § 111, p 532, supra). Additionally, under the dual capacity doctrine, an employee of a hospital may maintain a malpractice action against the hospital-employer and a doctor-employee for aggravation of injuries sustained in the course of employment where the medical services are made available generally to members of the public (Garcia v Iserson, 33 NY2d 421, 423).
Hartford’s argument that it stands in the shoes of the employer for immunity purposes is also without merit. The carrier’s rights and obligations are governed solely by the insurance contract. Its primary obligations under the contract are to pay compensation benefits to injured employees or death benefits to employees’ families once it assumes such obligations upon acceptance of the insurance premium (66 NY Jur, Workmen’s Compensation, §§ 906 and 907, pp 662-665). By performing safety inspections, Hartford is doing something clearly distinct from its contractual obligations to make payment of benefits under the insurance contract (Larson, Workmen’s Compensation Insurer as Suable Third Party, 1969 Duke LJ 1117, 1136-1139, supra; cf. Matter of Parchefsky v Kroll Bros., supra). Its obligations, whether under the law or created by contract, are to act as the employer’s carrier, not as its surrogate.
The public policy arguments, however, dealing with the consequences of making a carrier liable for negligent safety inspections are more complex and difficult to resolve. According to Hartford, holding a compensation carrier liable for negligent safety inspections will cause the carrier to stop making safety inspections and the ultimate losers will then be the employees and their families. In this connection, however, it is interesting to note the concession by Hartford that its safety inspections are not entirely motivated by altruistic feelings toward the employees, but take into consideration the financial advantages of reducing accidents.
Professor Larson has made a clear and compelling analysis *268 of this argument: "The public policy factor is by no means completely one-sided. True, public policy would favor promotion of safety through safety inspections by insurance carriers and would presumptively disfavor anything that would tend to discourage such efforts. At the same time, it must be asked: Does public policy generally favor relieving tort-feasors of the burden of paying for the consequences of their wrongs? If it does not, the issue becomes one of balancing policy considerations. Is the public interest in encouraging safety inspections by carriers so great that the public is willing to add to the carriers’ own motives for this activity a further incentive in the form of immunity from normal liability for its negligence? * * * Just how valuable is the insurer’s safety inspection contribution if it is limited, casual, and supplemental? Would an all-or-nothing responsibility really be a bad thing? Might it not be desirable to be able to assume that anyone undertaking safety inspections around a plant will do a complete job and take the responsibility for it?” (Larson, Workmen’s Compensation Insurer as Suable Third Party, 1969 Duke LJ 1141-1142, supra.)
A careful balancing of these considerations does not tip the balance in favor of the insurer. The argument that holding an insurance carrier liable for negligent safety inspections will result in causing the carrier to terminate such inspections and that this will work to the detriment of the employee and his family is questionable, because the benefits of the safety inspection inure directly to insurance carriers and only indirectly to the employer and employee. If the insurance carrier does not conduct or is careless in conducting safety inspections, any injuries resulting therefrom must be compensated for by the carrier. It is not the deprivation of immunity which causes the carrier to be careful but rather that it must pay for all claims of an injured employee, regardless of fault. It is therefore in its own economic interest to eliminate, as far as possible, those things which will cause an employee injury on the job (cf. Bryant v Old Republic Ins. Co., 431 F2d 1385, 1388, supra, and Mays v Liberty Mut. Ins. Co., 323 F2d 174, 178, supra, with Johnson v American Mut. Liab. Ins. Co., 559 F2d 382, 393, supra). Indeed, the fact that the carrier must pay regardless of fault compels the conclusion that the care it exercises will surpass the usual standard of "due care” because of its understandable interest in minimizing its costs.
In balancing these factors, then, it does not appear that *269 holding the insurer liable for negligent safety inspections will be injurious to the beneficial purposes of the Workers’ Compensation Law.
Hartford further argues that it would create an incongruity in the law if a carrier were made subject to common-law liability and, at the same time, have the statutory right of subrogation against itself to recover paid compensation benefits when an employee recovers in a third-party action (see Workers’ Compensation Law, § 29, subd 1). The Legislature, it is contended, could not have intended such an incongruous result. Professor Larson, however, has neatly answered this: "By now the law is becoming quite accustomed to apparent incongruities of this kind, what with corporations, insurers, and even individuals 'wearing different hats.’ Increasingly common is the spectacle of an insurance carrier acting as compensation subrogation plaintiff and as defendant insurer on a third party’s automobile liability risk. Problems of conflict of interest and of public policy may arise, but no one worries much any more about the conceptual problem of whether the carrier can sue itself. The present issue is not essentially different once it is recognized that the compensation carrier is being sued, not as compensation carrier, but as clinic operator or safety inspection service, in which role it is just as differentiable as the automobile liability insurer.” (Larson, Workmen’s Compensation Insurer as Suable Third Party, 1969 Duke LJ 1130-1131, supra; citations omitted.)
Furthermore, in the event of a recovery against the insurance carrier in a third-party action, it would be entitled to set off the amount of the compensation paid against any judgment. Obviously, therefore, the injured employee would not be the beneficiary of a double recovery.
Also without persuasion is the argument that six State Legislatures (Florida, Illinois, Iowa, Michigan, New Hampshire and Pennsylvania) specifically amended their statutes to exclude compensation carriers from liability for negligent inspections after courts had held them liable therefor. According to Hartford, this was a clear demonstration that these courts had misconstrued the legislative intent. Actually, these legislative amendments demonstrate only a recognition by the Legislatures in those States that they had overlooked providing for the question of a carrier’s liability which was not related solely to its obligation for benefits under the insurance contract. As a matter of fact, other States have not amended *270 their statutes after compensation carriers were held subject to tort liability.[4]
New York has had a workers’ compensation statute in effect for approximately 60 years and this statute has undergone several revisions and amendments. The provisions applicable to the case at bar, including subdivisions 3 and 12 of section 2, section 11 and subdivision 1 of section 29 have been amended several times but neither the original sections nor their amendments ever conferred employer immunity on the insurance carrier. In addition, between the years 1944 to 1958 at least six reports regarding the Workers’ Compensation Law were sent to the Governor.[5] While discussion of third-party actions and matters relating to insurance carriers and employers were frequently dealt with in these reports, there is no mention of or recommendations for conferring employer’s immunity on the carrier. In the final analysis, however, it is meaningless to speculate about legislative intent where, as here, the statutory language is clear and the only thing that is perhaps not clear is whether the precise issue was overlooked by the Legislature or was simply tacitly approved because of the Legislature’s nonaction (see, generally, Dickerson, Statutory Interpretation: A Peek Into the Mind and Will of a Legislature, 50 Ind LJ 206, 219-224).
Accordingly, this court holds that a workers’ compensation insurance carrier is not immune from suit for claimed negligent safety inspection of the employer’s premises.
Next to be determined is whether plaintiff has set forth a cause of action in negligence. It is clear that Hartford was under no contractual or legal duty to conduct safety inspections, a task which it nevertheless assumed voluntarily.
Judge Cardozo has enunciated the, by now, settled doctrine *271 in New York relating to liability for a gratuitous act committed negligently. "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all * * * A like principle applies, however, where action is directed toward the governance of conduct. The controlling circumstance is not the character of the consequence, but its proximity or remoteness in the thought and purpose of the actor.” (Glanzer v Shepard, 233 NY 236, 239-240; citations omitted; see, also, Thorne v Deas, 4 Johns 84, 96.)
The Court of Appeals has recently reaffirmed this rule (White v Guarente, 43 NY2d 356, 362-363; see, also, Restatement, Torts 2d, § 324 A; Prosser, Torts [4th ed], pp 707-709; cf. Parvi v City of Kingston, 41 NY2d 553, 559).
In examining the allegations of plaintiffs complaint, it appears that plaintiff has pleaded a sufficient cause of action and has raised triable issues of fact. One undertaking to conduct safety inspections must exercise reasonable care in so doing (Wroblewski v Otis Elevator Co., 20 AD2d 732). It is without question that injury to an employee was a foreseeable consequence of negligently carried out safety inspections. Although the inspections were gratuitous, plaintiff alleges that they were planned, periodic and conducted in conjunction with the employer’s personnel. As a result of such inspections, Hartford made recommendations for the elimination of potential problems. More importantly, all parties had knowledge that Hartford was conducting safety inspections and that it made recommendations based upon the same. Although plaintiff makes a bare, albeit uncontroverted, general allegation that the employees of Pfaudler acted in response to and relied upon Hartford’s recommendations, this is sufficient to raise a triable issue of fact.
Accordingly, defendant’s motion for summary judgment is in all respects denied.

. See, e.g., Del Code Ann, tit 19, § 2301; Fla Stats Ann, § 440.11, subd (2), as amd 1970; Ga Code Ann, § 114-101; Hawaii Rev Stats, § 386-1; Ill Stats, ch 48, § 138.5, as amd by Pub Act No. 78-1297, § 58, 1975; Ind Stats Ann, § 40-1205; Me Rev Stats Ann, tit 39, § 2, subd 6; Mich Stats Ann, § 17.237 (131); Neb Rev Stats, § 48-111; NH Rev Stats Ann, § 281:2; N M Stats Ann, § 59-10-4, subd D; Ore Rev Stats, § 656.018 (3); Pa Stats Ann, tit 77, § 501; S D Comp Laws Ann, § 62-1-2; Tenn Code Ann, § 50-902, subd (a); Tex Rev Civ Stats Ann, art 8306, § 3; Vt Stats Ann, tit 21, § 601, subd (3); Va Code Ann, § 65.1-3; Wis Stats Ann, § 102.03, subd (2), and § 102.29, subd (1); see, also, Carroll v Zurich Ins. Co., 286 So 2d 21 [Fla]; United States Fire Ins. Co. v Day, 136 Ga App 359; Reid v Employers Mut. Liab. Ins. Co., 59 Ill 2d 194; Edwards v Curtis, 387 A2d 223 [Me]; Brown v Travelers Ins. Co., 434 Pa 507.
Although these States have statutes which exempt the carrier from liability, one State has held the carrier liable in certain situations. In Corson v Liberty Mut. Ins. Co. (110 NH 210) the New Hampshire Supreme Court held that a compensation carrier which assists accident prevention by inspections and advice rendered to an employer may be held liable to an employee.

. See, e.g., Johnson v American Mut. Liab. Ins. Co., 559 F2d 382; Bartolotta v United States, 276 F Supp 66; Bartolotta v Liberty Mut. Ins. Co., 41 F2d 115; Barrette v Travelers Ins. Co., 28 Conn Supp 1; Burns v State Compensation Ins. Fund, 265 Cal App 2d 98; Donohue v Maryland Cas. Co., 363 F2d 442, affg for reasons in opn below 248 F Supp 588; Matthews v Liberty Mut. Ins. Co., 354 Mass 470; Modjeski v Atwell, Vogel & Sterling, 309 F Supp 119; United States Fid. & Guar. Co. v Theus, 493 P2d 433 [Okl]; Mustapha v Liberty Mut. Ins. Co., 387 F2d 631, affg 268 F Supp 890; Horne v Security Mut. Cas. Co., 265 F Supp 379.

. See Beasley v MacDonald Eng. Co., 287 Ala 189; United States Fid. & Guar. Co. v Jones, 356. So 2d 596 [Ala]; Nelson v Union Wire Rope Corp., 31 Ill 2d 69; Fabricus v Montgomery Elevator Co., 254 Iowa 1319; Bryant v Old Republic Ins. Co., 431 F2d 1385, revg 325 F Supp 241; Ray v Transamerica Ins. Co., 10 Mich App 55; Ruth v Bituminous Cas. Corp., 427 F2d 290; Stacy v Aetna Cas. & Sur. Co., 334 F Supp 1216, revd on other grounds 484 F 2d 289; Smith v Liberty Mut. Ins. Co., 409 F Supp 1211; Smith v American Employers’ Ins. Co., 102 NH 530; Corson v Liberty Mut. Ins. Co., 110 NH 210, supra; Mays v Liberty Mut. Ins. Co., 323 F2d 174, revg 211 F Supp 541; see, also, Davis v Liberty Mut. Ins. Co., 525 F2d 1204.

. For example, Alabama, Kentucky, Mississippi and North Carolina.

. Report to Hon. Thomas E. Dewey, Administration of the Workmen’s Compensation Law in the State of New York (1947); First Report to Hon. Thomas E. Dewey, Administration of the Workmen’s Compensation Law in the State of New York (1954) (commonly known as the first of the reports of the Moreland Act Commission); Interim Report to Hon. Thomas E. Dewey, Administration of the Workmen’s Compensation Law in the State of New York (1954); Report to Hon. Averell Harriman, Costs, Operations and Procedures under the Workmen’s Compensation Law of the State of New York (1957); Second Report to Hon. Averell Harriman, Costs, Operations and Procedures under the Workmen’s Compensation Law of the State of New York (1958); New York State Bar Association Report of Special Committee Appointed to Study the Workmen’s Compensation Law and to Cooperate with the Moreland Act Commission Investigating Workmen’s Compensation Costs, Operations and Procedures (1957).