Coos,
No. 5057.

REGINALD CURRIER *v*. ROY C. ABBOTT.

ROY C. ABBOTT & *a. v.* REGINALD CURRIER.

Argued September 5, 1962.

Decided October 31, 1962.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg, Jr.* (*Mr. Bigg* orally), for Currier.

*Devine, Millimet & McDonough* (*Mr. Shane Devine* orally), for Abbott and Hutchins.

DUNCAN, J. A major issue presented by these actions relates to instructions to the jury as to the respective liabilities of Currier and Abbott for the conduct of Pratt, the operator of the Currier truck. This truck, with the driver, was rented by Currier to Abbott. Both Currier and Abbott were general contractors. Abbott was engaged under a contract with the State in rebuilding a section of the highway known as Route 10 between Hanover and Lyme. At the time of the accident Pratt was engaged in hauling gravel from a gravel pit to the construction site in the truck owned by Currier. Hutchins was similarly engaged in the truck owned by Abbott.

Pratt was proceeding southerly and somewhat downgrade along a gravel-surfaced section of the highway under construction. The total weight of his vehicle and load was from seventy to eighty thousand pounds. Hutchins was proceeding in the opposite direction, in an empty truck weighing about 38,000 pounds. After

the accident the two vehicles were in contact with each other on the westerly side of the highway. Their tracks on the gravel surface were largely obscured soon after the collision by a heavy downpour of rain and the roadway was thereafter scraped by a bulldozer to permit traffic to pass.

Pratt was instantly killed in the collision. Hutchins was seriously injured and at the trial was able to recall little of the events immediately preceding the collision. The only other eye-witness to testify had been traveling behind the truck driven by Pratt. She testified that before the collision the northbound truck driven by Hutchins "swerved slightly to his left," and that the truck driven by Pratt appeared to be on its own side of the road. It could be found from her testimony that immediately after the collision the trucks were on the westerly side of the highway in the positions shown by photographs in evidence.

There was other evidence that parts of the trucks and some gravel were found on the easterly side of the road some distance north of where the vehicles came to rest. It was the contention of Abbott and Hutchins that the collision occurred at this point on the easterly side of the road.

The evidence was undisputed that Pratt was employed by Currier and hired out to Abbott with Currier's truck. Currier was paid by Abbott for Pratt's time as driver at rates established by the State. Currier in turn paid Pratt for the same time but at a somewhat higher rate, and for other time in maintenance and care of the truck at a somewhat lower rate.

There was no written agreement between Currier and Abbott with respect to the transactions between them. Currier was in the business of renting trucks and drivers, and Pratt was a skilled and competent driver operating a heavy and costly truck. Abbott operated trucks of his own, and hired other trucks and drivers from Currier and from other persons. Abbott concededly had the right to direct Pratt as to where to load the gravel and where to dump it. There was evidence that he determined when work should stop or suspend because of weather or other conditions. He testified that "if somebody didn't measure up" he had no hesitation to tell them what to do. He himself was present on some part of the job at all times during the operations.

It appeared that Currier gave his drivers general instructions concerning the maintenance and operation of his trucks, and visited the job occasionally to talk with Abbott or his own

drivers. It could be found upon the evidence that he could have taken a truck or driver off the job or substituted drivers, at will, and that Abbott likewise could have put both truck and driver off the job, but could not discharge one of Currier's drivers, or put him off the job and continue to use Currier's truck. There was no understanding that the trucks and drivers were hired for any particular period, or to haul any particular quantity of gravel, or to complete any particular part of the hauling.

From the facts of the case it is readily apparent that it draws in question the law relating to borrowed servants, a field which has been described as a "battle . . . of terminology, raging in a verbal wilderness." Smith: Scope of the Business: The Borrowed Servant Problem, 38 Mich. L. Rev. 1222, 1232. In this case the "battle" commenced over language appearing in *Indemnity Ins. Co. v. Cannon*, 94 N. H. 319. In argument to the jury, counsel for Currier stated the law without objection in the language of the quotation appearing in that case but substituting "may" for "must" in the first sentence, as follows: "When one person lends a servant to another for a particular employment, the person for anything done in that particular employment may be dealt with [as] a servant of the man to whom he is lent, although he remains the general servant . . . of the person who lent him. In other words, Pratt, the employee of Currier generally speaking, may for a particular purpose on a particular occasion be an employee and servant of Abbott, even though he continues to be the general employee of Mr. Currier and is paid by Mr. Currier for his work."

In instructing the jury the Trial Court relied upon the same language substituting the word "may" for the word "must" as did counsel. Although Abbott and Hutchins recognized that the Trial Court had made the substitution in the language of the *Cannon* case, they excepted to the instructions upon the ground that they were "incomplete and inaccurate," and that in the *Cannon* case the servant was operating an automobile owned by the special employer rather than the general employer. They also excepted to the denial of their first request for instructions, which would have charged the jury that "there is an inference" that Pratt remained in the employment of Currier "in the absence of contrary evidence," and would have instructed them that certain factors appearing in evidence indicated that Pratt remained

in the employment and control of Currier while working for Abbott.

In our opinion these exceptions present no ground for reversal. Factual differences between the *Cannon* case and this one justified if they did not compel the Court's modification of the language of the *Cannon* case. "Servant Lent to Another Master. A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others." Restatement (Second), Agency, s. 227. Upon the evidence in this case it could not be said that whatever Pratt did while hired out to Abbott "must" as a matter of law be considered done in the service of Abbott. Restatement, *supra, s.* **227,** *comment* a. On the other hand Pratt's work was the type of work customarily performed by Abbott and his servants, and being performed by them at that time. It could be found upon the evidence that Abbott rightfully directed and controlled something more than just the end result to be achieved by Pratt; and that Currier as Pratt's general employer lacked "any effective spot control over the . . . details of the work." 2 Harper & James, Law of Torts 1401. To the extent that the instructions utilized language from the *Cannon* case, there was no error.

In cases where a vehicle and a driver are loaned to a special employer engaged in a business different from that of the general employer for the accomplishment of a specific purpose, wholly unsupervised by the special employer, it may be that an inference or presumption should arise that the employee is to remain subject to the control and direction of his general employer. See *Charles* v. *Barrett,* 233 N. Y. 127, 129; *Mature* v. *Angelo,* 373 Pa. 593. However, such a rule was inapplicable upon the facts of this case, where it appeared that the special employer was engaged in the same business as the general employer so that the work to be done was within the scope of the former's business, and where there was evidence from which it could be found that the special employer in fact did exercise control over the manner in which the work was done. See *Wagner* v. *Motor Truck Renting Corp.,* 234 N. Y. 31, 37; *H. E. Wolfe Const. Co.* v. *Fersner,* 58 F. 2d 27 (4th Cir. 1932).

As an incident to the performance of Abbott's work Pratt might be said to be furthering Currier's business of renting out trucks and drivers. But it could be found that the work was

done in such a way that Pratt was engaged primarily in performing Abbott's work, under his direction and control. In such circumstances the imposition of liability for damages arising out of the work upon the enterprise primarily benefited is consistent with the rationale which underlies the conception of *respondeat superior* and the vicarious liability associated with it. See Restatement (Second), Agency, s. 219, *comment* a. The jury was properly instructed that the fundamental test is the determination of who exercised the "right of control over the performance of that work to the extent of prescribing the manner in which it is to be executed." See Restatement (Second), Agency, *ss*. 220 (1), 227; Annot. 17 A.L.R. 2d 1388, 1393-1394.

Abbott's and Hutchins' first request for instructions further sought to have the jury advised that various factors such as the fact that Currier could substitute another driver, that the period of hire was short, that Pratt was a skilled employee, that the truck was costly, that Pratt was paid by Currier and that Currier was in the business of renting trucks and men, indicated or should be considered as evidence that the employment by Currier persisted throughout. See *Golding-Keene Co.* v. *Insurance Co.,* 96 N. H. 64, 69, 70; Restatement (Second), Agency, *supra, ss*. 220 (2), 227 *comment* c.

In argument to the jury counsel for Abbott and Hutchins had emphasized these and other factors, and was permitted to argue without objection that each was "an indication that Mr. Pratt in this case remained the servant of Mr. Currier." In submitting the case to the jury the Court enumerated the same factors as "factors which you may consider" in arriving at a determination of who had the right to direct and control, and "was the master of Mr. Pratt at the time of this collision."

It cannot reasonably be said that the jury did not understand the significance of the factors which were discussed in argument by counsel for both sides, or that the Court erred in failing to designate them specifically as favoring one party or another. For the most part the factors enumerated by the Court were those tending to show liability on the part of Currier rather than Abbott. We conclude that neither Hutchins nor Abbott is in a position to complain that it was error not to comment upon specific portions of the evidence by "telling the jury what weight or significance should be given to these factors." *Tremblay* v. *Donnelly,* 103 N. H. 498, 504. See Note: Truckmen-Independent

Contractors or Servants, 9 Vand. L. Rev. 550. The exceptions relating to instructions to the jury are overruled.

Since the evidence plainly presented issues for the jury, Abbott's exceptions to the denial of his motions for nonsuit and directed verdict are also overruled. *Balcus* v. *Company*, 93 N. H. 428. See *Golding-Keene Co.* v. *Insurance Co.*, 96 N. H. 64, 70, *supra*.

The plaintiff Currier's original declaration dated February 10, 1959, described his vehicle as "owned by the plaintiff and operated by his employee." On May 11, 1961, shortly after pre-trial, Currier moved to amend the writ by substituting a new declaration alleging that the vehicle was "operated by Clarence Pratt." The motion was granted at the trial following the opening statements, and in the course of the trial both the original writ and the motion to amend were received in evidence without objection by Currier. At the close of the evidence, on motion by Currier, the Court ruled subject to exception that these exhibits should not go to the jury, and that counsel for Hutchins and Abbott would not be permitted to refer to the exhibits in argument.

The contention that this was error cannot be sustained. The trial proceeded upon the assumption that Pratt was an employee of Currier and that a primary issue was whether or not by virtue of the hiring out he also became an employee of Abbott, so as to charge Abbott with vicarious liability for his conduct. The allegation that Currier's truck was driven by Pratt was not inconsistent with the previous allegation that it was driven by an employee of Currier. See *Masterson* v. *Railway*, 83 N. H. 190, 193. The fact that the pleadings were received in evidence without objection by Currier did not preclude the order made by the Trial Court in its discretion. *Drescher* v. *Company*, 96 N. H. 508.

Exception was also taken to the refusal of the Court to withdraw from the jury "any issue of defective steering on the truck driven by Mr. Hutchins on the grounds there is no credible evidence that any difficulty with the steering gear was causal of this accident." There was evidence that after the accident the steering mechanism was broken. While there was testimony by Mr. Abbott that this was caused by the collision and did not occur before it, there was also evidence from which the jury could find that the steering mechanism of the truck was giving the driver difficulty in controlling it before the accident occurred.

*Dube* v. *Bickford*, 92 N. H. 362. The exception is accordingly overruled.

.The only other exception briefed and argued is an exception to argument made by counsel for Currier that "unless they satisfy you that the accident occurred where Mr. Abbott says that it is his opinion it occurred, then they have no case." This argument specifically referred to "the position of Mr. Abbott that the accident occurred some . . . eighty feet north of where the trucks came to rest." Counsel for Abbott and Hutchins objected upon the ground that "a witness is not bound by his opinion of something that may have happened."

We fail to see that the argument was open to the objection made. Although Abbott and Hutchins did not rest their claims solely upon the proposition that the collision occurred in Hutchins' lane of travel, the argument was not objected to upon this ground. In moving to set aside the verdicts, the objecting parties advanced as one ground for the motion, that the Court erred in allowing Currier's counsel to argue that Abbott and Hutchins "were bound by the testimony of Mr. Abbott that the accident occurred eighty feet . . . from . . . where the vehicles came to rest." In our judgment this was not the argument made, and the objection made at the trial was properly overruled.

*Judgment on the verdicts.*

All concurred.