Hillsborough
No. 79-233
No. 79-244

## Continental Insurance Company

v.

## New Hampshire Insurance Co. & a.

November 13, 1980

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Theodore Wadleigh* orally), for the plaintiff.

*James J. Kalled,* of Wolfeboro, by brief and orally, for the defendants Candace C. Parent and Joseph A. N. Parent, individually and p.p.a. Blanche T. Parent.

*Sheehan, Phinney, Bass & Green,* of Manchester (*Daniel W. Sklar* orally), for the defendants Armand H. Michaud d/b/a Mitch Trucking Service and Kenneth A. Booth.

BROCK, J.  These two cases arise out of a petition for declaratory judgment brought by the Continental Insurance Company to determine its obligation to provide liability coverage to the State of New Hampshire. The Trial Court (*Wyman,* J.) ruled that the plaintiff, Continental, had no obligation to provide coverage under the policy which it had issued to the State. The co-defendants, objecting to this ruling, filed separate appeals to this court, which have been consolidated. We affirm.

On December 26, 1969, a truck owned by Armand Michaud d/b/a Mitch Trucking Service (Mitch) and operated by Kenneth Booth, an employee of Mitch, was involved in a three-vehicle accident on Interstate 93 in Windham. At the time of the accident, the truck was engaged in plowing snow pursuant to a contract between Mitch and the State of New Hampshire. The other vehicles involved in the accident were one being operated by Andrew Therrien and another that was parked on the side of the highway.

As a result of the accident, Mrs. Parent, who was in her first trimester of pregnancy, sustained a variety of injuries. In addition, her child was born prematurely and suffers from numerous handicaps and injuries that allegedly resulted from the accident. Mrs. Parent and her husband, Joseph, individually and on behalf of the child, brought actions for personal injuries against Andrew Therrien, Armand Michaud d/b/a Mitch Trucking Service, Kenneth Booth and the State of New Hampshire. The action against the State is the sole subject of this appeal.

In the underlying tort action, the Parents contend that the State is vicariously liable for the alleged negligence of Booth, the operator of the truck. Although the State normally enjoys the benefits of sovereign immunity from tort actions, it waives its immunity to the extent that it has obtained liability insurance that covers the risk involved in the underlying tort action. RSA 412:3 (Supp. 1979). RSA 412:3 also bars an insurance carrier for the

State from pleading sovereign immunity. *Id.* Thus, in order for an insurance policy issued to the State to afford coverage, the State must, in the absence of sovereign immunity, be liable for the injuries complained of and the policy must insure the risk involved. The trial court determined that neither of these requirements was met in the instant case.

The trial court ruled that the State was not liable because Booth and the truck "remained under the control of and primarily responsible to and subject to the direction of [the] employer, Mitch Trucking Service." The co-defendants argue, however, that the employee control test is not determinative on the issue of vicarious liability. In the alternative, they also argue that an employee can be the servant of two masters, thus exposing both to liability under the doctrine of respondeat superior.

The evidence submitted to the trial court, consisting of an agreed statement of facts and answers to interrogatories, indicated that the State and Mitch had a written contract providing for the lease of both the truck and a driver to the State. Under the terms of the contract, "liability for injury, disability and death of persons caused by operation, handling or transportation of equipment during the rental period shall be assumed by the lessor (Mitch) and he shall indemnify the lessee (State) against all such liability." Moreover, the State required that Mitch carry liability insurance on all vehicles involved in its snowplowing operation and that it provide the State with satisfactory proof of compliance with this requirement. At the time of the accident, Mitch had liability insurance on its vehicles. It is agreed that Mitch's policy, issued by New Hampshire Insurance Company, provides coverage to Mitch with respect to this accident. The evidence presented to the trial court also indicated that because the State required private snowplowing contractors to purchase their own liability insurance, it neither intended to obtain, nor understood that it was obtaining, insurance coverage for the privately-owned vehicles when it purchased its own insurance coverage. Accordingly, the following clause was inserted in the State's insurance policy:

> "II. Persons insured
> None of the following is an insured:
>
> . . .
>
> (ii) the owner or lessee (of whom the named insured is a sublessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee."

Under its agreement with the State, Mitch undertook numerous snowplowing operations on State roads. While Mitch furnished the truck and its operator, the State provided a plowing assembly, which was mounted on the truck at a State garage. Other than the plow attachment and yellow flashing lights, there was no change in the appearance of Mitch's truck. It had no sign or insignia indicating that it was under State control or ownership.

The State determined when and where Mitch's trucks would plow snow, but there was no evidence that the State either exercised or had the right to control the actual operations of the truck itself. The State instructed Mitch that its plow trucks were to operate approximately 1,000 feet apart; that they were not to push or pull automobiles unless they were impeding plowing operations; and that they should be especially careful when plowing bridges or going over railroad tracks. Mr. Michaud relayed these instructions to his drivers. On occasion, State agents would remind the operators of these instructions. In the event that it was dissatisfied with a particular operator, the State would notify Mitch. According to the evidence, the State police were the only State agents who could require an operator to cease plowing for any reason other than completion of the job. In all other aspects, Mitch retained the right to control its operators, and to pay, hire and fire them.

■ Under these circumstances, we cannot say that the trial court erred in finding that the primary control over the operator rested with Mitch. "Right of control is determined, according both to the New Hampshire cases and to the Restatement, which they cite, as a 'question of fact' (RESTATEMENT, § 227) by marshalling and weighing a variety of factors, no one of which is controlling and all of which are to be considered." *Wilson v. Nooter Corp.*, 475 F.2d 497, 501 (1st Cir.), *cert. denied*, 414 U.S. 865 (1973), *relying on Currier v. Abbott*, 104 N.H. 299, 304, 185 A.2d 263, 267 (1962); *see* RESTATEMENT (SECOND) OF AGENCY § 227. Whether the operator of the plow truck was a borrowed servant and acting as a servant of the State "was a question of fact upon which the finding of the Trial Court cannot be disturbed if there is evidence to sustain it." *Indemnity Ins. Co. v. Cannon*, 94 N.H. 319, 321, 52 A.2d 855, 856 (1947).

■ As the co-defendants point out, we have in the past stated that the "control factor has been overemphasized in judicial reasoning" in the context of determining liability in cases involving the master-servant relationship. *Hunter v. R. G. Watkins*

*& Son, Inc.,* 110 N.H. 243, 246, 265 A.2d 15, 17 (1970). *Hunter,* however, involved a clear employer-employee relationship and stands for the proposition that an employer need not have control over every detail of an employee's performance in order to be liable for the employee's torts. When a case involves borrowed servants, or employees of an otherwise independent contractor, even *Hunter* clearly states that "control may be a decisive factor." *Id.* at 246, 265 A.2d at 17.

The defendants also correctly point out that in *Hunter* we stated that the test with which we are usually concerned in deciding whether to impose vicarious liability is "whether on all the facts the community would consider the person an employee." *Hunter v. R. G. Watkins & Son, Inc., supra* at 246, 265 A.2d at 17. On the basis of this language, defendants argue that the community would consider the operator of a plow truck on a State highway to be a State employee, especially when it displays yellow blinking lights. Whether or not such is the case, the *Hunter* test is "whether on *all the facts* the community" would draw that conclusion. *Id.* at 246, 265 A.2d at 17. (Emphasis added.) "All of the facts" in this case include not only the physical appearance of the truck, but also the contract between the State and Mitch as well as the operator's actual relationship to each of them.

The defendants argue that both Mitch and the State should be liable for the operator's alleged tort on the theory that one employee may have two employers. *See Strait v. Hale Constr. Co.,* 26 Cal. App. 3d 941, 103 Cal. Rptr. 487 (1972). In essence, the defendants argue that if there is duality of employment, then there must be duality of liability. The trial court, however, foreclosed application of this theory by finding that "the driver remain[ed] the employee and servant of [Mitch]." Our review of the record indicates that there was ample evidence to support that finding.

*Affirmed.*

All concurred.