## In re AURORA GRAPHICS, INC., Debtor.

### No. 00–11143–MWV.

United States Bankruptcy Court, D. New Hampshire.

Nov. 22, 2000.

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

Terrie Harman, Harman Law Offices, Portsmouth, NH, for debtor.

Michael Askenaizer, Nashua, NH, Chapter 7 Trustee.

Dennis G. Bezanson, Portsmouth, NH, for trustee.

Connie Rakowsky, Pamela E. Phelan, Orr & Reno, Concord, NH, for CNA Uni-Source.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the Trustee's objection to the proof of claim of CNA UniSource originally seeking a 507(a)(3) priority claim in the amount of $69,150.65, which was amended to $34,319.15 and further reduced to $30,473.27. Specifically, the Trustee objects to the claimed priority status of CNA UniSource. At a hearing held on October 17, 2000, the Court permitted the parties to provide additional memoranda of law and submit the matter for ruling based on the pleadings, including exhibits attached thereto and their memoranda. For the reasons set out below, the Court sustains the Trustee's objection.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

On or about November 1, 1998, the Debtor, Aurora Graphics, Inc., and CNA UniSource entered into a "Professional Employer Services Agreement" (the "Agreement"). On April 18, 2000, when the Debtor filed its petition under Chapter 7 of the Bankruptcy Code, this Agreement was still in effect. Subsequent to the petition filing date, CNA UniSource paid certain employees' claims for wages and/or benefits and obtained an assignment for each of the employees' claims. Based on these assignments, CNA UniSource claims it is entitled to be paid as a priority creditor under section 507(a)(3) of the Bankruptcy Code. The Trustee objected on the grounds that pursuant to the Agreement, CNA UniSource was in fact an employer of these wage claimants with an independent duty to pay them and, thus, there was no consideration for the assignment.

### DISCUSSION

 A party that pays wage claims of a debtor where such party is under no legal obligation to do so may receive an assignment of those employees' priority claims against the debtor. *See In re Paris Industries Corp.,* 95 B.R. 258 (Bankr. D.Me.1989). In support of its claim for

priority status, CNA UniSource argues that it was not an employer, but that it only provided administrative services. Therefore, CNA UniSource argues, it was under no obligation to pay the wages or benefit claims of the Debtor's employees, and by doing so it provided consideration for the assignment of the employee claims.

In determining its status, CNA Uni-Source asks the Court to look to the "totality of the circumstances," citing New Hampshire cases applying this test in determining whether an individual is an employee or independent contractor for purposes of workers' compensation benefits. *See Burnham v. Downing,* 125 N.H. 293, 480 A.2d 128 (1984); *Hamel Real Estate, Inc. v. Sheperd,* 121 N.H. 733, 433 A.2d 1320 (1981). It also cites *Continental Insurance Co. v. New Hampshire Insurance Co.,* 120 N.H. 713, 422 A.2d 1309 (1980), which determined whether vicarious liability would be imposed based upon "whether on all the facts the community would consider the person an employee." *Id.* at 716, 422 A.2d at 1311. The Court finds these cases to be inapposite since the specific circumstances to which those tests apply are not present here. Rather, the Court will first look to the unambiguous terms of the Agreement.

■ In support of its argument that it is not an employer, CNA UniSource urges the court to look only to paragraph 15 of the Agreement, which applies to third party rights, stating: "This Agreement shall in no way be interpreted as creating an employment contract express or implied between CNA UniSource, Client [Aurora] or any employee assigned to the Client's worksite." *See* Trustee's Objection to Allowance of Claim, Ex. A, ¶ 15. However, whether there is an employment contract between CNA UniSource and individual employees is not controlling since, in most instances, individuals who are unquestionably employees do not work pursuant to employment contracts.

In assessing CNA UniSource's status, the Court will look to the entire Agree-

ment. A reasonable interpretation of the Agreement must lead to a finding that CNA UniSource is at least a co-employer of the individuals and, thus, obligated to pay wages. Evidence of CNA UniSource's clear intent to act a co-employer is found throughout the Agreement, including the following passages:

Paragraph 1 of the Agreement entitled "Employment Arrangement" contains, in part, the following language:

This Agreement establishes a co-employer employment arrangement between CNA UniSource and Client [Aurora] where CNA UniSource will assume certain of the Client's common law employer responsibilities as stated in this Agreement and as may be required by law.... CNA UniSource shall retain responsibility for the overall direction and control of such employees.... Under this arrangement, Client and CNA UniSource mutually acknowledge and agree that the intent of this Agreement is to materially change the nature of the employment relationship at the Client's worksite(s) to a co-employer employment arrangement where CNA UniSource shall be the "administrative employer" and Client shall be the "worksite employer" with respect to those employees assigned by CNA UniSource to work at Client's worksite(s).

*Id.* at 1 ¶ 1;

Paragraph 2 of the Agreement establishes that CNA UniSource will provide "professional employment services as Client's co-employer," requiring that CNA UniSource pay employees from its accounts, that CNA UniSource's federal tax identification number will be used, and that CNA UniSource will obtain worker's compensation insurance for the employees. *Id.* at ¶ 2;

Paragraph 6A, which pertains to workers compensation, clearly indicates that

the employees shall be considered employees of CNA UniSource:

> Client understands, agrees, and acknowledges that no person shall become employed by CNA UniSource, be covered by CNA UniSource's workers' compensation insurance or any other benefit or term or condition of employment, or be issued a payroll check unless that person has prior to commencing such employment, completed CNA UniSource's employment application, W–4 withholding form and form I–9, all of which must be delivered to CNA UniSource before the person commences employment. CNA UniSource shall not be considered an employer for any person until that individual completes these forms and Client is notified that the person has been hired by CNA UniSource.

*Id.* at ¶ 6A;

Paragraph 13C of the Agreement sets out the status of the parties upon termination of the Agreement:

> Upon termination of this Agreement for any reason, CNA UniSource shall withdraw from the Professional Employer Services arrangement with Client and the employees assigned to Client's worksite(s) will be terminated and transferred to Client's payroll as of the effective date of termination of the Agreement.

*Id.* at ¶ 13C;

Paragraph 13E of the Agreement specifically provides that Aurora will indemnify and hold harmless CNA UniSource from "any liability whatsoever to any employee formerly assigned by CNA UniSource to Client's worksite(s) prior to the effective date of termination of this Agreement for any wages or other benefits to which such employee may be entitled." *Id.* at ¶ 13E.

Finally, the Court must refer to language on page 3 of CNA UniSource's marketing proposal. Under the topic "Overview," it contains the following language: "What is our Approach? We establish a co-employer relationship with you in which we become the legal employer of record in order to administer your employer-related responsibilities.... Why Can We Deliver? We believe that the role of the employer is a profession in and of itself. It is, quite simply, what we do." *Id.* at Ex. B. The Court will not simply allow CNA UniSource to ignore its own marketing proposal and Agreement (which it presumably drafted) in order characterize its status as co-employer as something else so that it might take advantage of priority status afforded by § 507(a)(3).

The Court also rejects CNA UniSource's attempt to distinguish *In re Mel–Hart Products, Inc.,* 156 B.R. 606 (Bankr. E.D.Ark.1993), which the Trustee cites in support of his objection. In *Mel–Hart* the debtor contracted with a firm to provide employees. The contract, like the Agreement here, established the debtor and the firm as "co-employers" and required the firm to provide such administrative services as paying wages, withholding and paying employment taxes, withholding and paying social security taxes and unemployment taxes, and providing workers compensation coverage. *Id.* at 607. As in the instant case, after paying employee wages, the firm argued that it was entitled to priority status as an assignee of the employee wage claims. The bankruptcy court rejected the firm's claim, finding that it was obligated to pay the wages of the employees. *Id.*

CNA UniSource asks the Court to distinguish *Mel–Hart* on the grounds that the firm in that case actually provided employees to the debtor, where in this case, the employees were already employed by Aurora. The Court finds this argument unpersuasive. Whatever the employment arrangement between the Debtor and its employees that existed prior to the contract with CNA UniSource, the terms of the Agreement unmistakably changed. Paragraph 1 of the Agreement spells out the change: "Under this arrangement,

Client and CNA UniSource mutually acknowledge and agree that the intent of this Agreement is to materially change the nature of the of the employment relationship at the Client's worksite(s) to a co-employer employment arrangement where CNA UniSource shall be the 'administrative employer' and Client shall be the 'worksite employer' with respect to those employees assigned by CNA UniSource to work at Client's worksite(s)." *See* Trustee's Objection, Ex. A at ¶ 1. By its own terms the Agreement superceded any previous employment arrangement, creating an arrangement where employees were "assigned" by CNA UniSource to the Debtor. Furthermore, as previously cited, under the Agreement CNA UniSource assumed "responsibility for the overall direction and control of such employees." *Id.*

The Court need go no farther. CNA UniSource entered into the Agreement specifically agreeing to be a co-employer in its own words. For providing certain administrative functions and employee benefit plans, it was paid a fee by Aurora. On the filing of bankruptcy, it simply had a claim like any other creditor for fees not paid. The Court finds that CNA UniSource, under the terms of the Agreement, had an obligation to pay the wages to these employees and, thus, may not stand in their shoes as a 507(a)(3) priority creditor. The objection of the Trustee is sustained, and the CNA UniSource claim shall be allowed as a general unsecured claim.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.